186 Cal.App.4th 1078 (2010)
113 Cal. Rptr. 3d 88
RALPHS GROCERY COMPANY, Plaintiff and Appellant,
v.
UNITED FOOD AND COMMERCIAL WORKERS UNION LOCAL 8, Defendant and Respondent.
No. C060413.
Court of Appeals of California, Third District.
July 19, 2010.
*1083 Morrison & Foerster, Miriam A. Vogel, Timothy F. Ryan and Tritia M. Murata for Plaintiff and Appellant.
Littler Mendelson, William J. Emanuel and Natalie Rainforth for Employers Group, California Grocers Association and California Hospital Association as Amici Curiae on behalf of Plaintiff and Appellant.
Davis, Cowell & Bowe, Sarah Grossman-Swenson, Elizabeth A. Lawrence and Andrew J. Kahn for Defendant and Respondent.
Edmund G. Brown, Jr., Attorney General, J. Matthew Rodriquez, Chief Assistant Attorney General, Manuel M. Medeiros, Solicitor General, Louis Verdugo, Jr., Assistant Attorney General, Angela Sierra and Antonette Benita Cordero, Deputy Attorneys General, as Amici Curiae on behalf of Defendant and Respondent.

OPINION
NICHOLSON, Acting P. J.
In this case, a union peacefully picketed in front of a grocery store, a private forum, contrary to the grocery store's demands that the union not use the private property for its expressive activities (its "speech," using the term generally). When the grocery store sought injunctive relief against the picketing, the court denied the relief based on California's statutory scheme making it virtually impossible for an employer to obtain injunctive relief in a peaceful labor dispute.
(1) This case presents the question of whether the state, based on the content of the speech, can force the owner or possessor of real property that is not a public forum to give an uninvited group access to the private property to engage in speech. We conclude that such legislation violates the First and Fourteenth Amendments of the United States Constitution and, therefore, is invalid.
*1084 Accordingly, we reverse and remand.

LEGAL BACKGROUND
(2) "The First Amendment to the United States Constitution provides that `Congress shall make no law ... abridging the freedom of speech ....' This fundamental right to free speech is `among the fundamental personal rights and liberties which are protected by the Fourteenth Amendment from invasion by state action.' [Citations.]" (Balboa Island Village Inn, Inc. v. Lemen (2007) 40 Cal.4th 1141, 1147 [57 Cal.Rptr.3d 320, 156 P.3d 339].) "For corporations as for individuals, the choice to speak includes within it the choice of what not to say. [Citation.]" (Pacific Gas & Elec. Co. v. Public Util. Comm'n (1986) 475 U.S. 1, 16 [89 L.Ed.2d 1, 12, 106 S.Ct. 903].) Forcing a speaker to host or accommodate another speaker's message violates the host's free speech rights. (Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc. (1995) 515 U.S. 557, 566 [132 L.Ed.2d 487, 115 S.Ct. 2338, 498-499] (Hurley) [state cannot require parade to include group whose message the parade's organizer does not wish to send].)
(3) The California Constitution protects, among other things, liberty of speech and private ownership of real property. The liberty of speech clause of the California Constitution states: "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press." (Cal. Const., art. I, § 2, subd. (a).) Concerning private property, the Constitution states: "All people are by nature free and independent and have inalienable rights. Among these are ... acquiring, possessing, and protecting property ...." (Cal. Const., art. I, § 1.)
(4) "As a general rule, landowners and tenants have a right to exclude persons from trespassing on private property; the right to exclude persons is a fundamental aspect of private property ownership. [Citation.] An injunction [exercising the court's equity jurisdiction] is an appropriate remedy for a continuing trespass. [Citation.]" (Allred v. Harris (1993) 14 Cal.App.4th 1386, 1390 [18 Cal.Rptr.2d 530] (Allred).) However, if the private property is a public forum under the California Constitution, the courts may not enjoin those who enter the private property and engage in speech, conforming with the reasonable time, place, and manner restrictions of the property owner, because, under those circumstances, the owner has no right to exclude, and, therefore, it is not a trespass. (14 Cal.App.4th at p. 1390.)
*1085 (5) The elements of a common law trespass are (1) the plaintiff's ownership or control of the property; (2) the defendant's intentional, reckless, or negligent entry on the property; (3) lack of permission to enter the property, or acts in excess of the permission; (4) actual harm; and (5) the defendant's conduct as a substantial factor in causing the harm. (See CACI No. 2000.)
Whether the areas within shopping centers and around large retail stores are public forums for the purpose of speech under California law has been the subject of litigation for many years. In Robins v. Pruneyard Shopping Center (1979) 23 Cal.3d 899 [153 Cal.Rptr. 854, 592 P.2d 341] (Pruneyard), the California Supreme Court held that the liberty of speech clause of the California Constitution protected speech in a privately owned shopping center, subject to the owner's reasonable time, place, and manner restrictions, because the owner had created a public forum for speech. (See Fashion Valley Mall, LLC v. National Labor Relations Bd. (2007) 42 Cal.4th 850, 858 [69 Cal.Rptr.3d 288, 172 P.3d 742] (Fashion Valley) [following Pruneyard].) The shopping center at issue in Pruneyard consisted of 21 acres, with 65 shops, 10 restaurants, and a cinema. (Pruneyard, supra, at p. 902.)
Subsequent cases decided by the Courts of Appeal have distinguished the large Pruneyard-type shopping center from large individual retail stores, even though those stores are located within a larger retail development. These cases have held that the entrance areas and aprons of these large retail stores do not present a public forum. (See, e.g., Van v. Target Corp. (2007) 155 Cal.App.4th 1375 [66 Cal.Rptr.3d 497] (Van); for a detailed analysis of the cases leading to this holding, see Albertson's, Inc. v. Young (2003) 107 Cal.App.4th 106, 113-120 [131 Cal.Rptr.2d 721] (Albertson's).)
In addition to the constitutional provisions that may restrict a court from granting relief to a private property owner when California's liberty of speech clause is implicated, two statutes apply to relief that may or may not be granted when the speech relates to a labor dispute. Those statutes are Code of Civil Procedure section 527.3, also known as the Moscone Act, enacted in 1975 (Stats. 1975, ch. 1156, § 1, p. 2845), and Labor Code section 1138.1, enacted in 1999 (Stats. 1999, ch. 616, § 1, p. 4343).
The Moscone Act limits the equity jurisdiction of the courts in cases involving labor disputes. (Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters (1979) 25 Cal.3d 317, 321 [158 Cal.Rptr. 370, 599 P.2d 676] (Sears II).) (We refer to this case as Sears II because that is how it is referred to in most cases and literature on the subject, even though there is no *1086 reason here to discuss the prior decision arising from that case.) The Moscone Act declares that conduct relating to a "`labor dispute,'" such as peaceful picketing, "shall be legal, and no court nor any judge nor judges thereof, shall have jurisdiction to issue any restraining order or preliminary or permanent injunction which, in specific or general terms, prohibits any person or persons, whether singly or in concert, from [engaging in the specified conduct.]" (Code Civ. Proc., § 527.3, subd. (b).) The Moscone Act defines "`labor dispute'" broadly. (Code Civ. Proc., § 527.3, subd. (b)(4).)
Without referring to the Moscone Act, Labor Code section 1138.1 restricts the authority of the courts to issue a preliminary or permanent injunction in a case involving a labor dispute. It requires the court in such a case to hold a hearing with live witnesses and to make findings of fact as prerequisites to issuing an injunction. (Lab. Code, § 1138.1, subd. (a).) Before a court may grant injunctive relief in a labor dispute, the court must make all of the following factual findings:
"(1) That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained, but no injunction or temporary restraining order shall be issued on account of any threat or unlawful act excepting against the person or persons, association, or organization making the threat or committing the unlawful act or actually authorized those acts.
"(2) That substantial and irreparable injury to complainant's property will follow.
"(3) That as to each item of relief granted greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by the granting of relief.
"(4) That complainant has no adequate remedy at law.
"(5) That the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection." (Lab. Code, § 1138.1, subd. (a).)
With this legal background in mind, we turn to a discussion of the facts and procedure unique to this case.

*1087 FACTS AND PROCEDURE
Plaintiff Ralphs Grocery Company (Ralphs) owns Foods Co, a large warehouse grocery store located in Sacramento in a retail development called College Square. The employees of Foods Co are not represented by a union. Defendant United Food and Commercial Workers Union Local 8 (the Union) has negotiated with Ralphs to make Foods Co a union store, but the parties reached an impasse.
The store has only one entrance for customers. In front of the entrance of Foods Co is a sidewalk or apron that extends out about 15 feet to the asphalt of a driving lane that separates the apron from the parking lot. The entrance area (including the exit door) is about 31 feet wide.
Around the corner on the left side of the Foods Co building, looking at the building from the front, there is a courtyard area with three benches and a large circular planter. The benches are up against the side of the Foods Co building. Beyond the courtyard is a separate building with a hair salon, a nail salon, and a beauty supply store. College Square, not Foods Co, maintains the courtyard area. There was no evidence that the Union was using or intended to use this courtyard area for its speech.
On the right side of Foods Co, attached to the Foods Co building, are an empty retail space and two fast-food restaurants. Several more retail establishments are located in College Square, some of them restaurants with outside seating. A large parking lot serves the customers of all the retail establishments in College Square.
Foods Co opened on July 25, 2007. On that day, between eight and 10 agents of the Union picketed the store, encouraging people not to shop at Foods Co because it is not a union store. They walked back and forth in front of the doors, carrying picket signs and handing out flyers. The Union's agents returned generally five days each week and engaged in the same activities, staying about eight hours.
In January 2008, Ralphs gave to the Union a memorandum containing Foods Co's rules for speech on the premises. The rules prohibited distribution of literature, physical contact with any person, and display of signs larger than two feet by three feet. The rules also prohibited speech within 20 feet of the store entrance and banned all speech during specified hours of the day and for a week before designated holidays.
*1088 The Union's agents generally did not adhere to Foods Co's rules for speech. They handed out flyers and stood within five feet of the doors. Foods Co management called the Sacramento Police Department and asked the officers to remove the Union's agents. The officers gave the Union's agents a copy of Foods Co's rules for speech and told Foods Co management that giving the rules to the Union's agents was all they would do at that point because the Sacramento Police Department was unwilling to remove peaceful picketers from Ralphs's property. After the officers left, the Union's agents continued to violate Foods Co's rules.
Several other groups or individuals have used Foods Co's entrance area and apron, as well as the parking lot, to engage in speech. Groups or individuals have solicited money for causes, panhandled, gathered signatures on petitions, and sold, at various times, subscriptions to a newspaper, DVD's, and tamales or burritos.
On April 15, 2008, Ralphs filed a complaint against the Union in the Sacramento Superior Court. The complaint alleged trespass and sought declaratory and injunctive relief to prevent the Union from using Ralphs's property as a forum for expression of the Union's views. Ralphs applied for a temporary restraining order, which the trial court denied. However, the court issued an order to show cause and set an evidentiary hearing on whether to issue a preliminary injunction.
Before the evidentiary hearing was held, the parties submitted briefing on the law involved in the dispute. The trial court issued a tentative ruling concerning the law in which the court held that (1) the Moscone Act violates the First and Fourteenth Amendments of the United States Constitution, considering United States Supreme Court precedent, and is therefore unenforceable; (2) the trial court is bound by the decision of this court in Waremart Foods v. United Food & Commercial Workers Union (2001) 87 Cal.App.4th 145 [104 Cal.Rptr.2d 359] (Waremart I), in which we held that Labor Code section 1138.1 does not violate federal and state constitutional guarantees of equal protection; and (3) the evidentiary hearing would focus on whether, applying Labor Code section 1138.1, "Ralphs is entitled to injunctive relief under California law, considering the issue of whether the location in question is a public forum, and if so, whether the time, place and manner restrictions on expressive speech are reasonable."
Concerning the Moscone Act, the trial court stated that it "constitutes content based discrimination that violates the [First] [A]mendment and Equal Protection Clause. And, the Court is bound by the U.S. Supreme Court cases *1089 holding that statutes that favor one type of speech over another violate the [First] [A]mendment." (Citing two U.S. Supreme Court cases, discussed below.)
Concerning Labor Code section 1138.1, the trial court stated that it would have similarly found that statute unconstitutional if the court was not bound by Waremart I (also discussed below). The court believed our decision was "based on an erroneous interpretation of the holding of the U.S. Supreme Court cases ...." However, because the trial court was bound by the case from this court, the trial court set a date for the evidentiary hearing pursuant to Labor Code section 1138.1.
After the evidentiary hearing, the trial court concluded that Ralphs had failed to introduce evidence sufficient to carry its burden of proof as to any of the five elements enumerated in Labor Code section 1138.1. The court stated:
"The Court finds that [Ralphs] operates a grocery store, Foods Co, at which the defendant Union has picketed five days a week, 8 hours a day, since the store opened in July 2007. The evidence did not establish that the Union had committed any unlawful act, or that it had threatened to do so. There was no evidence that anything the [Union was] doing would cause any `substantial and irreparable injury' to the store property, or that public officers were unable or unwilling to furnish adequate protection to plaintiff's property.
"The evidence established that other persons on the property to solicit money or signatures for their own causes placed themselves in the zone that Ralphs had declared off-limits (e.g.[,] in front of the doors), but apparently did not cause any undue disruption to Ralphs' business since little effort was made to remove them. No evidence established that anything that the [Union] did was any more disruptive tha[n] the actions of others. Ralphs has failed to carry its burden of proof that its rules are reasonable time, place and manner restrictions within the guidelines of [Fashion Valley]."
The trial court therefore denied Ralphs's motion for a preliminary injunction.

DISCUSSION

I

Public or Private Forum
We first turn to the question of whether the entrance area and apron of the Foods Co store are a public or private forum. Rejecting the Union's argument, *1090 discussed below, that we need not consider this question, we conclude that the entrance area and apron of the Foods Co store are a private forum under California law.
(6) The Union asserts that we need not consider this issue because the trial court denied the injunction on other groundsnamely, that Ralphs failed to bear its burden on the elements required by Labor Code section 1138.1 for an injunction. We disagree with the Union for two reasons. First, the trial court found that Ralphs's time, place, and manner restrictions were unreasonable, citing Fashion Valley. Such an analysis is necessary only if we are dealing with a public forum. Therefore, even though the trial court did not expressly find that the front entrance and apron of the Foods Co store are a public forum, it did so implicitly by applying the public forum analysis. And second, if the front entrance and apron of the Foods Co store are a public forum, we need not consider the constitutionality of the Moscone Act and Labor Code section 1138.1 because Ralphs's time, place, and manner restrictions were unreasonable for a public forum and that conclusion by itself supports the trial court's decision to deny injunctive relief. It is against the policy of the courts of this state "to reach out and unnecessarily pronounce upon the constitutionality of any duly enacted statute." (Palermo v. Stockton Theatres, Inc. (1948) 32 Cal.2d 53, 65 [195 P.2d 1].)
The Foods Co store in College Square is indistinguishable from the stand-alone stores in shopping centers in Van, supra, 155 Cal.App.4th 1375, a case in which the Court of Appeal held that the entrance areas and aprons of such stores are not public forums.
In Van, a group sued Target, Wal-Mart, and The Home Depot for prohibiting their signature gathering activities at a table off to the side of the entrance to each store. (Van, supra, 155 Cal.App.4th at pp. 1378-1379.) Each of these large retail stores was located in "larger retail developments," with "amenities provided by those centers, including their restaurants, theaters, and community events." (Id. at p. 1380.) Applying Pruneyard and its progeny, the Van court stated that "the apron and perimeter areas of [the] stores do not act as the functional equivalent of a traditional public forum." (Id. at p. 1388.)
The Van court continued: "[The defendants'] storesincluding the store apron and perimeter areasare not designed as public meeting spaces. The stores' invitation to the public is to purchase merchandise and no particular societal interest is promoted by using the stores for expressive activity. As such, [the defendants'] interest in maintaining control over the area immediately in front of their stores outweighs society's interest in using those areas *1091 as public fora. We are not persuaded by [the plaintiffs'] central argument that the presence of [the] stores in larger, Pruneyard-type shopping centers alters this balance." (Van, supra, at p. 1390.)
Distinguishing the front of the large, individual stores from the common areas of the shopping centers, the Van court concluded: "We decline to extend the holding in Pruneyard to the entrance and exit area of an individual retail establishment within a larger shopping center. [The plaintiffs'] evidence concerning the public nature of certain shopping centers' common areas failed to raise a triable issue of fact as to whether apron and perimeter areas at the entrances and exits of [the defendants'] stores served as public fora." (Van, supra, at p. 1391; see also Albertson's, supra, 107 Cal.App.4th at pp. 109-110 [holding that entrance area of grocery store not a public forum even though store located in shopping center].)
The same is true here. Although there was evidence that College Square included common areas and restaurants where outdoor seating was available, the entrance area and apron of Foods Co did not include such areas. Thus, because they were not designed and presented to the public as public meeting places, the entrance area and apron of Foods Co do not constitute a public forum under the liberty of speech clause of the California Constitution. And because the area was not a public forum, Ralphs, as a private property owner, could limit the speech allowed and could exclude anyone desiring to engage in prohibited speech.
(7) This remains true even though Ralphs granted the right to other groups to use the entrance and apron area of Foods Co for speech. The trial court found that groups unrelated to the Union were allowed to solicit money or signatures in the front entrance area. But this did not transmute the property into a public forum. A private owner may selectively permit speech or prohibit speech in a private forum without affecting the private nature of the forum. (Albertson's, supra, 107 Cal.App.4th at p. 125.)
Despite this authority supporting our conclusion that the area in front of the Foods Co store is a private forum and, therefore, the Union cannot assert free speech rights as a bar to injunctive relief, the Union cites cases of the California Supreme Court which, as the Fashion Valley court stated, held that "a privately owned shopping center must permit peaceful picketing of businesses in shopping centers, even though such picketing may harm the shopping center's business interests." (Fashion Valley, supra, 42 Cal.4th at p. 864.) Those cases include In re Lane (1969) 71 Cal.2d 872 [79 Cal.Rptr. 729, 457 P.2d 561] (Lane) and Schwartz-Torrance Investment Corp. v. Bakery & Confectionery Workers' Union (1964) 61 Cal.2d 766 [40 Cal.Rptr. 233, 394 P.2d 921] (Schwartz-Torrance). We have noted, as did the Fashion *1092 Valley court, that those cases were based on the now discredited notion that the First Amendment of the United States Constitution may prohibit private property owners from restricting expressive activities on their properties. (Fashion Valley, supra, at p. 861; id. at p. 880 (dis. opn. of Chin, J.); Albertson's, supra, 107 Cal.App.4th at p. 123.)
(8) Considering the United States Supreme Court and California Supreme Court cases decided since Lane and Schwartz-Torrance, which relied on the First Amendment, the only continuing vitality of Lane and Schwartz-Torrance lies in the jurisprudence of the analogous liberty of speech clause in the California Constitution. Lane and Schwartz-Torrance are no longer independently viable. Thus, Lane and Schwartz-Torrance cannot be read to expand the rights of individuals engaging in speech on private property beyond the analysis in Pruneyard and Fashion Valley. That analysis requires, as a starting point, a determination of whether the area is a public or private forum. Applying that analysis, we conclude that, because the area in front of the Foods Co store is not a public forum, the Union's free speech rights, whether under the federal First Amendment or the state liberty of speech clause, are not infringed.

II

Constitutionality of Statutes
Having determined that the front entrance and apron of the Foods Co store are a private forum where Ralphs can restrict speech without constitutional constraints, we are faced squarely with the constitutionality of the Moscone Act and Labor Code section 1138.1, which withdraw from Ralphs the ability to obtain injunctive relief, the only peaceful means to protect Ralphs's property and free speech rights. The Union's agents entered Ralphs's private property to engage in speech despite Ralphs's prohibition and regulation of such conduct. Thus, unless state laws can be interpreted to make such conduct lawful, the Union's agents were trespassing. We must decide whether the Moscone Act and Labor Code section 1138.1 validly prevented the trial court from enjoining the trespass. Applying binding precedents, we conclude that the Moscone Act and Labor Code section 1138.1 are unconstitutional.

A. Moscone Act

The trial court concluded that the Moscone Act, which limits the court's equity jurisdiction in labor relations cases, incurably violates the First and Fourteenth Amendments of the United States Constitution. We agree that the Moscone Act favors speech related to labor disputes over speech related to *1093 other matters, based on the content of the speech. Consequently, we also agree that the Moscone Act is unconstitutional and that the defect cannot be cured to render constitutional the application of the act to the facts of this case.
(9) We first discuss the enactment of the Moscone Act, along with the California Supreme Court's 1979 plurality decision in Sears II, interpreting the Moscone Act and finding that the act provides a right to engage in speech related to labor disputes on private property, regardless of whether the private property is a public forum under Pruneyard. We then discuss two decisions of the United States Supreme Court, Police Department of Chicago v. Mosley (1972) 408 U.S. 92 [33 L.Ed.2d 212, 92 S.Ct. 2286] (Mosley) and Carey v. Brown (1980) 447 U.S. 455 [65 L.Ed.2d 263, 100 S.Ct. 2286] (Carey), which held that treating speech concerning a labor dispute differently from other types of speech constituted unconstitutional content-based discrimination under the First and Fourteenth Amendments. We finally conclude that the Moscone Act, as interpreted by the Sears II plurality, violates the First and Fourteenth Amendments of the United States Constitution because it favors speech relating to a labor dispute over other types of speech.
The Legislature passed the Moscone Act in 1975 "to promote the rights of workers to engage in concerted activities for the purpose of collective bargaining, picketing or other mutual aid or protection, and to prevent the evils which frequently occur when courts interfere with the normal processes of dispute resolution between employers and recognized employee organizations...." (Code Civ. Proc., § 527.3, subd. (a).)
In Sears II, the California Supreme Court reviewed an order restraining union agents from peacefully picketing on a privately owned sidewalk surrounding the plaintiff's stand-alone department store. While the case was pending on appeal, the Legislature passed the Moscone Act, which the Supreme Court considered in reviewing the trial court order. (Sears II, 25 Cal.3d at pp. 320-321.) Three justices of the court cited the court's prior decisions as establishing the legality of picketing on private sidewalks outside the store as a matter of state labor law. (Id. at p. 328.) Thus, the plurality concluded that "the sidewalk outside a retail store has become the traditional and accepted place where unions may, by peaceful picketing, present to the public their views respecting a labor dispute with that store. Recognized as lawful by the decisions of this court, such picketing likewise finds statutory sanction in the Moscone Act, and enjoys protection from injunction by the terms of that act. In such context the location of the store whether it is on the main street of the downtown section of the metropolitan area, in a suburban shopping center or in a parking lot, does not make any difference. Peaceful *1094 picketing outside the store, involving neither fraud, violence, breach of the peace, nor interference with access or egress, is not subject to the injunction jurisdiction of the courts." (Id. at pp. 332-333.)
The Sears II plurality expressly declined to base its decision on Pruneyard's interpretation of the California Constitution. Instead, the decision was based entirely on the Moscone Act. (Sears II, supra, 25 Cal.3d at p. 327, fn. 5.) The Moscone Act therefore protects peaceful picketing on an employer's private property if the picketing relates to a labor dispute.
We next turn to the constitutional jurisprudence of the United States Supreme Court and the two cases, Mosley and Carey, that are most relevant to whether the Moscone Act violates the United States Constitution.
In Mosley, a 1972 case, the United States Supreme Court considered a Chicago ordinance that generally prohibited picketing within 150 feet of a school, but made a specific exception for picketing in a labor dispute. The plaintiff was a man who frequently picketed, always peacefully, outside a high school, carrying a sign that stated that the high school discriminated racially. He sued for injunctive and declaratory relief because he was told that, if he picketed after the effective date of the ordinance, he would be arrested. (Mosley, supra, 408 U.S. at pp. 92-93.) The court held that the ordinance violated the First Amendment and the equal protection clause of the Fourteenth Amendment because of the ordinance's "impermissible distinction between labor picketing and other peaceful picketing." (Mosley, supra, at p. 94.) "The central problem with Chicago's ordinance is that it describes permissible picketing in terms of its subject matter. Peaceful picketing on the subject of a school's labor-management dispute is permitted, but all other peaceful picketing is prohibited. The operative distinction is the message on a picket sign. But, above all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content. [Citations.]" (Mosley, supra, at p. 95.)
The Mosley court concluded: "Necessarily, then, under the Equal Protection Clause, not to mention the First Amendment itself, government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views. And it may not select which issues are worth discussing or debating in public facilities. There is an `equality of status in the field of ideas,' and government must afford all points of view an equal opportunity to be heard. Once a forum is opened up to assembly or speaking by some groups, government may not prohibit others from assembling or speaking on the basis of what they intend to say. Selective exclusions from a public forum may not be based on content alone, and may not be justified by reference to content alone." (Mosley, supra, 408 U.S. at p. 96, fn. omitted.)
*1095 (10) In 1980, eight years after Mosley, the United States Supreme Court again considered selective prohibition of speech based on content. In Carey, the court found unconstitutional an Illinois statute that prohibited picketing on the public streets and sidewalks adjacent to residences but exempted picketing of a place of employment in a labor dispute. (Carey, supra, 447 U.S. at pp. 457, 471.) The court rejected the argument that the state's interest in allowing labor protests justified the differential treatment. "The central difficulty with this argument is that it forthrightly presupposes that labor picketing is more deserving of First Amendment protection than are public protests over other issues, particularly the important economic, social, and political subjects about which these appellees wish to demonstrate. We reject that proposition. [Citation.]" (Id. at p. 466.)
The obvious difference between the Moscone Act and the laws scrutinized in Mosley and Carey is that the Moscone Act selectively allows speech in a private forum based on the content of the speech by withdrawing the remedy of the property owner or possessor while the laws scrutinized in Mosley and Carey selectively excluded speech from a public forum based on content. This difference, however, is not legally significant. The effect on speech is the same: the law favors speech related to labor disputes over speech related to other mattersit forces Ralphs to provide a forum for speech based on its content. (See Pacific Gas & Elec. Co. v. Public Util. Comm'n, supra, 475 U.S. 1.)
(11) Governmental discrimination based on the content of speech is subject to strict scrutiny. (Fashion Valley, supra, 42 Cal.4th at p. 865.) It "may be sustained only if the government can show that the regulation is a precisely drawn means of serving a compelling state interest." (Consolidated Edison Co. v. Public Serv. Comm'n (1980) 447 U.S. 530, 541 [65 L.Ed.2d 319, 330, 100 S.Ct. 2326].) Here, the Union makes no argument that the Moscone Act passes strict scrutiny or that the Moscone Act is a narrowly-tailored law justified by a compelling state interest. Indeed, Mosley and Carey establish that there is no compelling government interest in forcing a property owner or possessor to allow speech related to a labor dispute when speech relating to other issues can be prohibited. (Carey, supra, 447 U.S. at pp. 464-467.)
Accordingly, as applied in this case, the Moscone Act violates the First and Fourteenth Amendments of the United States Constitution. The act affords preferential treatment to speech concerning labor disputes over speech about other issues. It declares that labor protests on private property are legal, even though a similar protest concerning a different issue would constitute trespassing. And it denies the property owner involved in a protest over a labor dispute access to the equity jurisdiction of the courts even though it does not deny such access if the protest does not involve a labor dispute.
*1096 Citing Sears II and the opinion of the Court of Appeal in M Restaurants, Inc. v. San Francisco Local Joint Exec. Bd. Culinary etc. Union (1981) 124 Cal.App.3d 666 [177 Cal.Rptr. 690] (M Restaurants), the Union claims that the constitutionality of the Moscone Act has already been established. To the contrary, Sears II is not binding precedent on the issue, and M Restaurants did not involve private property and is therefore not persuasive. As did the trial court in this case, we agree with the opinion of the United States Court of Appeals for the District of Columbia in Waremart Foods v. National Labor Relations Bd. (D.C. Cir. 2004) 359 U.S. App.D.C. 312 [354 F.3d 870] (Waremart II). In that case, the federal court concluded that the Moscone Act violates the First and Fourteenth Amendments.
The Sears II plurality decision did not consider the First Amendment issue. The decision stated: "[T]he Moscone Act, interpreted in light of prior decisions of this court, declares such peaceful picketing [on the private property sidewalks surrounding the store] to be legal and thus not subject to injunction. Rejecting Sears' contention that it enjoys a federally protected right to enjoin peaceful picketing on property it has opened to public use, we conclude that the trial court lacks jurisdiction to enjoin the picketing at issue here." (Sears II, supra, 25 Cal.3d at p. 321.) Thus, the decision found that the Moscone Act applies to a case such as ours in which union agents are peacefully picketing on private property and that there is no federal right to enjoin such peaceful picketing. However, the Sears II decision did not consider the First and Fourteenth Amendment implications of its decision, whether the statute's provisions declaring labor picketing on private property to be legal constituted content-based discrimination. Those are the implications of Sears II that we consider today. Since Sears II did not consider the constitutional issue, it does not stand as authority, binding or persuasive, on that issue. (Silverbrand v. County of Los Angeles (2009) 46 Cal.4th 106, 127 [92 Cal.Rptr.3d 595, 205 P.3d 1047] [cases not authority for propositions not considered].)
Also clear from the Sears II decision is that the Moscone Act requires the courts to treat speech that can be characterized as "union activity" differently from speech that cannot be so characterized. The court stated: "Although the reach of the Moscone Act may in some respects be unclear, its language leaves no doubt but that the Legislature intended to insulate from the court's injunctive power all union activity which, under prior California decisions, has been declared to be `lawful activity.'" (Sears II, supra, 25 Cal.3d at p. 323, original italics.) But these conclusions do not establish the constitutionality of the Moscone Act.
*1097 (12) Furthermore, the Sears II opinion was signed by just three justices of the court, a plurality, and therefore did not reflect the views of a majority of the court. "The case thus lacks authority as precedent [citations], and the doctrine of stare decisis does not require us to defer to it [citation]." (Board of Supervisors v. Local Agency Formation Com. (1992) 3 Cal.4th 903, 918 [13 Cal.Rptr.2d 245, 838 P.2d 1198].)
Neither Sears II nor any other decision of the California Supreme Court has dealt with the issue we consider here. One commentator noted that in Fashion Valley, the Supreme Court's most recent case analyzing Pruneyard-type rights, the court did not discuss Sears II or the Moscone Act: "[A] perplexing aspect of the Fashion Valley decision is the omission from the majority's detailed historical account of any reference to the earlier decision in Sears II, in which a plurality of the Court had held that the Moscone Act authorized a union to picket on the privately owned sidewalk surrounding a stand-alone department store. This omission seems to be an implied recognition that Sears II and the Moscone Act are unconstitutional as content discrimination under the First Amendment, as the D.C. Circuit held in Waremart [II] by relying on the United States Supreme Court's decisions in Police Department of Chicago v. Mosley and Carey v. Brown." (Emanuel, Union Trespassers Roam the Corridors of California Hospitals: Is a Return to the Rule of Law Possible? (2009) 30 Whittier L.Rev. 723, 764, fns. omitted.)
The Union's reliance on M Restaurants as a precedent that the Moscone Act is consistent with the First and Fourteenth Amendments is also misplaced for two reasons. First, M Restaurants did not consider picketing on private property, and, second, any pronouncements in M Restaurants about the constitutionality of denying injunctive relief based on the Moscone Act are dicta because injunctive relief was granted.
In M Restaurants, the employer sought an injunction against union picketers who were picketing at the entrances to a restaurant, blocked the doorways, harassed employees and potential customers, and lied to potential customers about the sanitary conditions in the restaurant. (M Restaurants, supra, 124 Cal.App.3d at pp. 671-672.) While the opinion does not explicitly state whether the property on which the union picketed was public or private, it implies that the property was public by quoting from a case upholding the constitutionality of statutes limiting injunctive relief available when labor protesters picket on a public street. (Id. at pp. 675-676, quoting Senn v. Tile Layers Union (1937) 301 U.S. 468 [81 L.Ed. 1229, 57 S.Ct. 857].) The trial court granted injunctive relief to the restaurant. (M Restaurants, supra, at pp. 671-672.)
*1098 On appeal, the M Restaurants court considered whether injunctive relief could be sustained under the newly enacted Moscone Act. On the subject of equal protection, the court stated that "the statute bears a rational relationship to its purpose..." (M Restaurants, supra, 124 Cal.App.3d at p. 677), but the court did not discuss whether the statute treats speech related to labor disputes differently from speech relating to other issues. After finding no constitutional problems with the Moscone Act, the court nevertheless concluded that the picketers' conduct was unlawful and the Moscone Act did not prevent the trial court from exercising its equity jurisdiction to enjoin the unlawful conduct. (M Restaurants, at pp. 685-686.) Therefore, the court's discussion of the constitutionality of the Moscone Act was unnecessary to the decision. (Santisas v. Goodin (1998) 17 Cal.4th 599, 620 [71 Cal.Rptr.2d 830, 951 P.2d 399] [decisions authority only for points actually involved and decided].)
Accordingly, M Restaurants is unpersuasive.
The District of Columbia Circuit of the United States Court of Appeals determined that the Moscone Act, as interpreted by the California Supreme Court in Sears II, violates the First Amendment because it discriminates based on the content of the speech. (Waremart II, supra, 354 F.3d at p. 875.) The District of Columbia Circuit relied on Mosley and Carey in making this determination. To avoid content discrimination and render the statute constitutionally valid, the District of Columbia Circuit concluded that "under California law labor organizing activities may be conducted on private property only to the extent that California permits other expressive activity to be conducted on private property." (Waremart II, supra, at p. 875.)
(13) Although decisions of the federal circuit courts are not binding on us, the reasoning and logic of Waremart II are persuasive. (Barrett v. Rosenthal (2006) 40 Cal.4th 33, 58 [51 Cal.Rptr.3d 55, 146 P.3d 510] [decisions of lower federal courts not binding but may be persuasive].)
(14) Therefore, as did Waremart II, we conclude that the Moscone Act violates the First and Fourteenth Amendments as applied to the circumstances of this case because it favors speech related to a labor dispute over speech related to other issues. To render it constitutional, the Moscone Act must be read to allow speech, in a private forum, related to a labor dispute only to the extent that speech related to other issues is allowed. Because the Union's agents were trespassing in this case, the Moscone Act cannot be construed to prohibit the courts from exercising their equity jurisdiction as they would in a case not involving a labor dispute.

*1099 B. Labor Code section 1138.1

(15) Labor Code section 1138.1 suffers from the same constitutional defect as the Moscone Actit favors speech relating to labor disputes over speech relating to other matters. It adds requirements for obtaining an injunction against labor protesters that do not exist when the protest, or other form of speech, is not labor related.
(16) "An injunction is an appropriate remedy for a continuing trespass. [Citation.]" (Allred, supra, 14 Cal.App.4th at p. 1390, fn. omitted.) "To obtain a preliminary injunction, the plaintiff must establish the defendants should be restrained from the challenged activity pending trial. [Citations.] The plaintiff must show (1) a reasonable probability it will prevail on the merits and (2) that the harm to the plaintiff resulting from a refusal to grant the preliminary injunction outweighs the harm to the defendant from imposing the injunction. [Citation.]" (Bank of Stockton v. Church of Soldiers (1996) 44 Cal.App.4th 1623, 1625-1626 [42 Cal.Rptr.2d 429, 52 Cal.Rptr.2d 429].) "[I]n order to obtain injunctive relief the plaintiff must ordinarily show that the defendant's wrongful acts threaten to cause irreparable injuries, ones that cannot be adequately compensated in damages. [Citation.] Even in an action for trespass to real property, in which damage to the property is not an element of the cause of action, `the extraordinary remedy of injunction' cannot be invoked without showing the likelihood of irreparable harm. [Citations.]" (Intel Corp. v. Hamidi (2003) 30 Cal.4th 1342, 1352 [1 Cal.Rptr.3d 32, 71 P.3d 296], italics omitted.)
While some of the requirements of Labor Code section 1138.1 for obtaining injunctive relief in a labor dispute are the same as the requirements when there is no labor dispute involved, other requirements of Labor Code section 1138.1 are unique to labor disputes. For example, to obtain an injunction against trespass in a labor dispute, the property owner or possessor must show that (1) unlawful acts have been threatened and will be committed (Lab. Code, § 1138.1, subd. (a)(1)), (2) substantial and irreparable injury to the property will follow (Lab. Code, § 1138.1, subd. (a)(2)), and (3) public officers will not or cannot intercede (Lab. Code, § 1138.1, subd. (a)(5)). On the other hand, when no labor dispute is involved, (1) the trespass itself, without a further unlawful act, justifies an injunction (Allred, supra, 14 Cal.App.4th at p. 1390 [injunction available against trespass]; but see Waremart I, supra, 87 Cal.App.4th at p. 158 [peaceful picketing not unlawful act under statute]); (2) any irreparable harm, not necessarily to the property, supports injunctive relief (Uptown Enterprises v. Strand (1961) 195 Cal.App.2d 45, 52 [15 Cal.Rptr. 486] [injury to reputation and business interest suffices]); and (3) the inability or unwillingness of public officers to provide adequate protection is not an element of trespass or a requirement of injunctive relief.
*1100 Therefore, when a property owner seeks injunctive relief against a trespass by labor protesters, that owner cannot protect its ownership interest (or a tenant, its possessory interest) to prevent a trespass without overcoming difficult obstacles not applicable to injunctive relief against trespassers not engaged in a labor dispute. Those additional obstacles include showing an unlawful act other than the trespass, irreparable harm to the property itself, and inability or unwillingness of public officers to provide protection. Based on the content of the speech of the protester, an injunction against trespass in a labor dispute is much more difficult to obtain than an injunction against trespass under any other circumstances.
(17) As we explained with respect to the Moscone Act, the strict scrutiny test applies to differential treatment of speech based on its content. (Fashion Valley, supra, 42 Cal.4th at p. 865; Consolidated Edison Co. v. Public Serv. Comm'n, supra, 447 U.S. at p. 541.) As in the case of the Moscone Act, there is no compelling state interest justifying this differential treatment. (See Carey, supra, 447 U.S. at pp. 464-467.) Therefore, as applied to the circumstances of this case, Labor Code section 1138.1 violates the First and Fourteenth Amendments of the United States Constitution.
We recognize that we reached a contrary result in Waremart I, supra, 87 Cal.App.4th 145. In that case, we stated that Labor Code section 1138.1 passes constitutional muster under the rational relationship test. But we applied the rational relationship test because the plaintiff made no argument and presented no authority to apply the strict scrutiny test. (Waremart I, supra, at p. 158.)
(18) We also stated that Labor Code section 1138.1 does not limit the content of speech but is, instead, merely "a rule of procedure ... and does not address speech." (Waremart I, supra, 87 Cal.App.4th at p. 158.) This observation, however, did not consider the effect of the rule of procedure. Just like a poll tax designed to prevent certain groups from voting (see Harper v. Virginia Bd. of Elections (1966) 383 U.S. 663 [16 L.Ed.2d 169, 86 S.Ct. 1079] [state's poll tax violates equal protection clause]), Labor Code section 1138.1 is not just a procedural prerequisiteit is an impediment designed to prevent an owner or possessor of real property from obtaining an injunction in a labor dispute, even though injunctive relief would otherwise be available.
Labor Code section 1138.1 is more than just a rule of procedure. In effect, it differentiates speech based on its content and imposes prerequisites that make it virtually impossible for a property owner to obtain injunctive relief. The statute thereby forces the private property owner to provide a forum for speech with which the owner disagrees and it bases that compulsion on the *1101 content of the speech. (See Hurley, supra, 515 U.S. at pp. 575-576; Pacific Gas & Elec. Co. v. Public Util. Comm'n, supra, 475 U.S. at p. 16.)
The Union cites several cases in an attempt to establish that Labor Code section 1138.1 does not violate the First and Fourteenth Amendments because it restricts judicial remedies limiting speech instead of limiting speech itself. This is a distinction without a difference. And the cases cited by the Union do not support its argument.
For example, the most recent case cited by the Union, Ysursa v. Pocatello Ed. Assn. (2009) 555 U.S. ___ [172 L.Ed.2d 770, 129 S.Ct. 1093] (Ysursa), is inapposite. In that case, a state law prohibited use of union dues for political speech if the dues were deducted from a state employee's wages. The unions sued, asserting that the ban on payroll deductions for political activities was a restriction on speech based on its content, violating the First and Fourteenth Amendments. The United States Supreme Court disagreed. It held that, although content-based restrictions "are `presumptively invalid' and subject to strict scrutiny" (Ysursa, supra, at p. ___ [172 L.Ed.2d at p. 777]), this was not a content-based restriction because the state was not obligated to provide payroll deductions at all, and the law did not abridge the union's freedom of speech"they are free to engage in such speech as they see fit." (Id. at pp. ___-___ [172 L.Ed.2d at pp. 777-778].) Here, on the other hand, the government is effectively forcing Ralphs to provide a forum for speech with which it disagrees by withholding the only real peaceful remedy for excluding the Union from using Ralphs's private property for the Union's speech. Unlike the situation in Ysursa, Labor Code section 1138.1 abridges Ralphs's free speech rights by forcing it to host or accommodate speech with which it disagrees.
Under the circumstances of this case, Labor Code section 1138.1 violates the First and Fourteenth Amendments of the United States Constitution.
The Union asserts that, if we find that Labor Code section 1138.1 violates the United States Constitution by favoring speech related to labor, we should apply the statute to all speech-related cases, regardless of the content. We conclude that the statute may not be extended to apply to all cases because the Legislature did not intend such a drastic invasion of property rights.
(19) "When a statute's differential treatment of separate categories of individuals is found to violate equal protection principles, a court must determine whether the constitutional violation should be eliminated or cured by extending to the previously excluded class the treatment or benefit that the statute affords to the included class, or alternatively should be remedied by withholding the benefit equally from both the previously included class and *1102 the excluded class. A court generally makes that determination by considering whether extending the benefit equally to both classes, or instead withholding it equally, would be most consistent with the likely intent of the Legislature, had that body recognized that unequal treatment was constitutionally impermissible. [Citations.]" (In re Marriage Cases (2008) 43 Cal.4th 757, 856 [76 Cal.Rptr.3d 683, 183 P.3d 384].) In the case cited, the California Supreme Court opted to extend marriage to same-sex couples rather than withholding marriage from everyone. (Ibid.)
(20) Here, there is nothing to indicate that the Legislature desired to override dozens of cases involving whether a forum is public or private and, in one fell swoop, force property owners and possessors to allow all forms of peaceful speech in a private forum by withholding the remedy of injunction. The Union simplistically suggests that doing so would be "consistent with the goals of [Labor Code section 1138.1]." While that may be true if one considers only the stated goal of promoting speech relating to labor disputes, it does not mean that the Legislature also had an unstated goal of promoting all forms of speech in a private forum. It is apparent from the very limited nature of the statute, applying only to labor disputes, that the Legislature did not intend to drastically change the law concerning speech in a private forum. Therefore, the proper remedy is simply to invalidate the statute.

III

Injunctive Relief
The Union contends that, even if we conclude that the Moscone Act and Labor Code section 1138.1 cannot be applied to this case, we should still affirm the trial court's judgment because the court made findings that would result in denial of the preliminary injunction even without applying the Moscone Act and Labor Code section 1138.1. The Union asserts that (1) there was no unlawful act, (2) there was no irreparable harm; and (3) Ralphs failed to carry its burden of showing that its rules on expressive activities were reasonable time, place, and manner restrictions under Fashion Valley. While the trial court made these findings, they do not support the Union's argument because (1) there is no requirement that an unlawful act beyond the trespass be committed, (2) a continuing trespass under these circumstances constitutes irreparable harm as a matter of law for which damages are not adequate, and (3) time, place, and manner restrictions under Fashion Valley do not apply to a private forum.
(21) A continuing trespass is, for purposes of injunctive relief, an unlawful act. Apart from the additional requirement of Labor Code section 1138.1, which we hold cannot be applied here, a party seeking an injunction need *1103 not establish an unlawful act beyond the trespass. (See Allred, supra, 14 Cal.App.4th at p. 1390 [injunction appropriate remedy for continuing trespass].)
And the continuing trespass itself also causes irreparable harm. "`[T]he extraordinary remedy of injunction' cannot be invoked without showing the likelihood of irreparable harm. [Citations.]" (Intel Corp. v. Hamidi, supra, 30 Cal.4th at p. 1352.) "Injunction is a proper remedy against threatened repeated acts of trespass [citations], particularly where the probable injury resulting therefrom will be `beyond any method of pecuniary estimation,' and for this reason irreparable. [Citation.]" (Uptown Enterprises v. Strand, supra, 195 Cal.App.2d at p. 52.) When a trespasser engages in activities to discourage the public from patronizing a business, the effect of the activity cannot be quantified because there is no way of knowing who would have patronized the business but for the trespasser's activities. Therefore, the unquantifiable loss of business caused by the Union's activities on Ralphs's property constitutes irreparable harm here, as a matter of law.
The trial court's contrary ruling may be attributed to Labor Code section 1138.1's requirement of "substantial and irreparable injury to complainant's property" (Lab. Code, § 1138.1, subd. (a)(2)), which is a different standard from the standard for obtaining an injunction generally. The standard for obtaining an injunction generally does not require a showing that the likely injury will be to the property itself. Therefore, the trial court's finding, applying Labor Code section 1138.1, is not binding, and the showing was sufficient to establish a likelihood of irreparable harm.
Finally, as noted above, the reasonableness of time, place, and manner restrictions is irrelevant unless the property is a public forum under Pruneyard and its progeny or other state or federal constitutional precedent. The area at issue in this litigation is not a public forum, so the Union's argument fails.
Because Ralphs made an unrebutted showing of a continuing trespass on the part of the Union, Ralphs established a reasonable probability it will prevail on the merits and the harm resulting from a refusal to grant the preliminary injunction outweighs the harm to the Union. (See Bank of Stockton v. Church of Soldiers, supra, 44 Cal.App.4th at p. 1626 [requirements for preliminary injunction against trespass].) Ralphs is therefore entitled to a preliminary injunction.

*1104 DISPOSITION
The order denying a preliminary injunction is reversed and remanded with instructions to grant the preliminary injunction. Ralphs is awarded its costs on appeal. (Cal. Rules of Court, rule 8.278(a).)
Raye, J., and Robie, J., concurred.