Filed 12/12/14; part. pub. order 1/6/15 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| DONAHUE SCHRIBER REALTY GROUP, INC., <br><br> Plaintiff and Respondent, <br><br> v. <br> NU CREATION OUTREACH et al., <br><br> Defendants and Appellants. | F068287 <br><br> (Super. Ct. No. 13CECG02422) <br><br> **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County. Kristi Culver Kapetan, Judge.

Damone Daniel, in pro. per., for Defendant and Appellant Damone Daniel.

No appearance for Defendant and Appellant Nu Creation Outreach.

Morrison & Forester, Miriam A. Vogel, David F. McDowell, Dale K. Larson and Jeremiah M. Levine for Plaintiff and Respondent.

-ooOoo-

Plaintiff obtained a preliminary injunction enjoining defendants from soliciting charitable donations or engaging in other expressive activities on sidewalks adjacent to store entrances in plaintiff's shopping center; the order permits defendants to engage in

such activities in the public forum area of the shopping center designated on a diagram attached to the injunction.  Defendants appeal, contending the areas adjacent to store entrances where they solicited donations are public forum areas in which expressive activities cannot be prohibited.  We find no error in the trial court's determination that the store entrances and aprons are not a public forum.  Accordingly, we affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff controls the Fig Garden Village shopping center, an outdoor shopping center with approximately 60 retailers.  Plaintiff has a policy of prohibiting solicitation of donations on the shopping center property; it allows other forms of expressive activity, such as gathering petition signatures, in a designated public forum area only.  On July 28, 2013, two solicitors for Nu Creation Outreach went on the shopping center property and solicited donations on sidewalk areas adjacent to the entrances of stores within the shopping center.  The next day, six to eight solicitors for Nu Creation Outreach solicited donations adjacent to multiple retailers in the shopping center.  Plaintiff explained its policy regarding solicitation and asked the solicitors to leave, but they refused.  When plaintiff called the police to have the solicitors removed, the officers would not arrest them without a court order.

Plaintiff filed a complaint against Damone Daniel and Nu Creation Outreach for declaratory relief and trespass; it also filed an ex parte application for a temporary restraining order (TRO) and an order to show cause (OSC) why a preliminary injunction should not be issued, enjoining defendants and their agents from soliciting donations on the shopping center property.  The trial court granted the ex parte application and issued a TRO and an OSC.  After hearing of the OSC, the trial court issued a preliminary injunction, which did not prohibit all solicitation on plaintiff's property, but restricted it to a designated public forum area marked on a map attached to the preliminary injunction.  Defendants appeal.

2

## DISCUSSION

### I.     Appeal by Nu Creation Outreach

The complaint named as defendants Daniel and Nu Creation Outreach; it alleged the solicitation of donations was conducted by solicitors from Nu Creation Outreach. The papers and brief purportedly filed on behalf of defendants in the trial court and in this appeal were filed by Daniel in propria persona.  Daniel purports to appear on behalf of himself and Nu Creation Outreach.  One of his arguments on appeal is that Nu Creation Outreach was not the correct entity to name as a defendant in the complaint.  He asserts Nu Creation Outreach runs youth centers and food pantries outside of Fresno County and the solicitors on plaintiff's property were not there as agents of Nu Creation Outreach.  In an amended opposition to the OSC, filed in the trial court purportedly on behalf of Nu Creation Outreach, Daniel asserted Nu Creation Outreach is a corporation and he is not its owner, though he is a member of its board of directors and its treasurer.  Daniel stated he leads a coalition called "Nu Creations" or "Nu Creations Free Speech Coalition," and it was the members of this coalition who were soliciting donations at Fig Garden Village. He asks this court to "release Nu Creation Outreach as a Defendant in this case."

A corporation may not represent itself in court; it may not appear in propria persona or through an officer or agent who is not an attorney.  (*Ziegler v. Nickel* (1998) 64 Cal.App.4th 545, 547-548; *Clean Air Transport Systems v. San Mateo County Transit Dist*. (1988) 198 Cal.App.3d 576, 578-579.)  Actions taken or papers filed on behalf of a corporation by a representative who is not an attorney are not automatically void or a nullity.  (*CLD Construction, Inc. v. City of San Ramon* (2004) 120 Cal.App.4th 1141, 1147-1149.)  The court may allow the corporation an opportunity to obtain an attorney before treating a filing as void; it "retains authority to dismiss an action if an unrepresented corporation does not obtain counsel within a reasonable time." (*Id*. at pp. 1149-1150.)

3

Plaintiff pointed out in its reply to defendants' opposition to the OSC that Nu Creation Outreach, as a corporation, was required to be represented by an attorney and that a nonattorney corporate agent appearing in court on behalf of a corporation would be engaged in the unlicensed practice of law. Rather than correcting the defect by obtaining an attorney for Nu Creation Outreach, Daniel continued to attempt to appear for the corporation, filing an amended opposition and an amended answer on its behalf. The trial court noted in its order after hearing that Nu Creation Outreach, as a corporation, was not allowed to represent itself or be represented by a nonattorney, and therefore had effectively not appeared in the action. It added: "Nu Creation was advised of this at the hearing and still did not obtain counsel before filing the supplemental brief." Despite these warnings of the need for an attorney for Nu Creation Outreach, Daniel filed a notice of appeal purporting to appeal on behalf of Nu Creation Outreach; in this court, Daniel continues to attempt to represent Nu Creation Outreach, by filing a brief purportedly on behalf of both Daniel and Nu Creation Outreach.

There is nothing in the record indicating Daniel is an attorney licensed to practice law in the state of California. As a nonattorney, he may not appear in court on behalf of Nu Creation Outreach, a corporation. Daniel was advised of this and had ample opportunity to see that Nu Creation Outreach obtained an attorney prior to making further appearances or filing further papers in court. Nu Creation Outreach failed to obtain and appear by a licensed attorney. Daniel continues to attempt to appear for Nu Creation Outreach in this court. Accordingly, the appeal purportedly filed on behalf of Nu Creation Outreach is not properly before this court. We note that, if Nu Creation Outreach wishes to appear and contest plaintiff's claims in the trial court, it must do so through a licensed attorney.[1]

---

[1] If, as Daniel contends, Nu Creation Outreach is the wrong entity to be named as a defendant in plaintiff's case, that claim may be presented to the trial court through the proper procedural device by an attorney acting on behalf of Nu Creation Outreach.

## II.    Appealability and Standard of Review

An order granting an injunction is an appealable order.  (Code Civ. Proc., § 904.1, subd. (a)(6).)  Ordinarily, it is reviewed for abuse of discretion.  "It is settled that the decision to grant a preliminary injunction is within the discretion of the trial court.  [Citations.]  A trial court abuses its discretion only if it has '"exceeded the bounds of reason or contravened the uncontradicted evidence."'  [Citations.]"  (*City of Los Altos v. Barnes* (1992) 3 Cal.App.4th 1193, 1199.)

"Notwithstanding the applicability of the abuse of discretion standard of review, the specific determinations underlying the superior court's decision are subject to appellate scrutiny under the standard of review appropriate to that type of determination.  [Citation.]"  (*Smith v. Adventist Health System/West* (2010) 182 Cal.App.4th 729, 739 (*Smith*).)  "[W]hen the trial court's order involves the interpretation and application of a constitutional provision, statute, or case law, questions of law are raised and those questions of law are subject to de novo (i.e., independent) review on appeal.  [Citation.]"  (*Prigmore v. City of Redding* (2012) 211 Cal.App.4th 1322, 1333.)  "[T]he superior court's express and implied findings of fact are accepted by appellate courts if supported by substantial evidence."  (*Smith,* at p. 739.)

In reviewing the ruling on a request for a preliminary injunction, we do "not resolve conflicts in the evidence, reweigh the evidence, or assess the credibility of witnesses.  [Citation.]  '"[T]he trial court is the judge of the credibility of the affidavits filed in support of the application for preliminary injunction and it is that court's province to resolve conflicts."'  [Citation.]  Thus, even when presented by declaration, 'if the evidence on the application is in conflict, we must interpret the facts in the light most favorable to the prevailing party and indulge in all reasonable inferences in support of the trial court's order.'  [Citation.]"  (*Whyte v. Schlage Lock Co*. (2002) 101 Cal.App.4th 1443, 1450.)  "The party challenging the injunction bears the burden of showing a clear

abuse of discretion or error of law. [Citations.]" (*California Correctional Peace Officers Assn. v. State of California* (2000) 82 Cal.App.4th 294, 302 (CCPOA).)

## III. Preliminary Injunction

"(a) An injunction may be granted in the following cases:

"(1) When it appears by the complaint that the plaintiff is entitled to the relief demanded, and the relief, or any part thereof, consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually.

"(2) When it appears by the complaint or affidavits that the commission or continuance of some act during the litigation would produce waste, or great or irreparable injury, to a party to the action.

"(3) When it appears, during the litigation, that a party to the action is doing, or threatens, or is about to do, or is procuring or suffering to be done, some act in violation of the rights of another party to the action respecting the subject of the action, and tending to render the judgment ineffectual.

"(4) When pecuniary compensation would not afford adequate relief.

"(5) Where it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief.

"(6) Where the restraint is necessary to prevent a multiplicity of judicial proceedings.

"(7) Where the obligation arises from a trust." (Code Civ. Proc., § 526, subd. (a).)

"In determining whether to issue a preliminary injunction, the trial court considers two related factors: (1) the likelihood that the plaintiff will prevail on the merits of its case at trial, and (2) the interim harm that the plaintiff is likely to sustain if the injunction is denied as compared to the harm that the defendant is likely to suffer if the court grants a preliminary injunction. [Citation.] 'The latter factor involves consideration of such things as the inadequacy of other remedies, the degree of

6

irreparable harm, and the necessity of preserving the status quo.' [Citation.]" (*14859 Moorpark Homeowner's Assn. v. VRT Corp.* (1998) 63 Cal.App.4th 1396, 1402.)

"'By balancing the respective equities, the trial court should conclude whether—pending trial on the merits—the defendant should or should not be restrained from exercising his or her claimed right.' [Citation.] Thus, on appeal from an order granting a preliminary injunction, the question generally is whether both irreparable harm and the likelihood of prevailing on the merits are established. [Citation.]" (*CCPOA, supra*, 82 Cal.App.4th, at p. 302.)

### A. *Likelihood of prevailing on the merits*

Plaintiff based its request for an injunction on its cause of action for trespass. In that cause of action, plaintiff alleged defendants and those associated with them came onto plaintiff's property multiple times without authorization and refused to leave when asked to do so by plaintiff's employees, causing plaintiff damage. "'The essence of the cause of action for trespass is an "unauthorized entry" onto the land of another.' [Citation.]" (*Cassinos v. Union Oil Co*. (1993) 14 Cal.App.4th 1770, 1778.) The "'"intent required as a basis for liability as a trespasser is simply an intent to be at the place on the land where the trespass allegedly occurred.… The defendant is liable for an intentional entry although he has acted in good faith, under the mistaken belief, however reasonable, that he is committing no wrong.'" (*Miller v. National Broadcasting Co*. (1986) 187 Cal.App.3d 1463, 1480-1481.) "'[A] trespass may occur if the party, entering pursuant to a limited consent, i.e., limited as to purpose or place, proceeds to exceed those limits by divergent conduct on the land of another. "A conditional or restricted consent to enter land creates a privilege to do so only in so far as the condition or restriction is complied with." [Citation.]' [Citations.]" (*Cassinos,* at p. 1778.)

Plaintiff presented evidence that the Nu Creation solicitors entered plaintiff's shopping center on two succeeding days and remained there after being asked to leave.

Although the property was open to the public for purposes of shopping and making purchases from the stores located there, the solicitors engaged in soliciting charitable donations, an activity not permitted by plaintiff in the area in which they were carrying it out. Thus, the solicitors' activities on plaintiff's property exceeded the scope of consent given for entry. Plaintiff believed the solicitors' activities were interfering with the flow of traffic around the entrances to stores in the shopping center, discouraging customers from returning to shop in the shopping center, and eroding the goodwill of both customers and tenants. The police declined to remove them and plaintiff believed the solicitors would continue to come onto the property to solicit donations unless enjoined. Thus, plaintiff submitted evidence sufficient to satisfy the elements of a cause of action for trespass.

The key issue in determining whether plaintiff established a likelihood of prevailing on the merits, or whether Daniel defeated that showing, is whether the portion of the shopping center where the solicitors were soliciting donations was a public forum, where speech could be limited only by reasonable time, place, and manner restrictions, that are content-neutral, narrowly tailored, and leave ample alternative means of communication of the information. (See *Fashion Valley Mall, LLC v. National Labor Relations Bd.* (2007) 42 Cal.4th 850, 865.) "As a general rule, landowners and tenants have a right to exclude persons from trespassing on private property; the right to exclude persons is a fundamental aspect of private property ownership. [Citation.] An injunction is an appropriate remedy for a continuing trespass. [Citation.] [¶] The right to exclude persons exercising First Amendment rights, however, is not absolute." (*Allred v. Harris* (1993) 14 Cal.App.4th 1386, 1390, fn. omitted.)

In *Marsh v. Alabama* (1946) 326 U.S. 501 (*Marsh*), the United States Supreme Court held that a privately owned company town could not restrict the First Amendment rights of citizens being exercised in the business center of the town. The court concluded

8

a company town was no different from any publicly operated municipality in its relationship to its citizens and their constitutional rights; the state could not prohibit distribution of religious literature on the sidewalk of the town's business block, which served as the community shopping center. (*Marsh,* at pp. 507-509.)

In *Lloyd Corp. v. Tanner* (1972) 407 U.S. 551 (*Lloyd*), however, the court held a privately owned shopping center was not required to permit speech activities, such as distributing handbills protesting the war in Vietnam, on its premises. The court observed the purpose of the shopping center was to bring in potential shoppers, create a favorable impression, and generate goodwill; there was no open-ended invitation to use the shopping center for any and all purposes. (*Id*. at p. 565.) Unlike union picketing in a shopping center outside a store whose employees were not yet unionized, the handbilling had no relation to any purpose for which the shopping center was being used; the handbills could have been distributed in any public place. (*Id*. at pp. 558-560, 564.) The court noted it had "never held that a trespasser or an uninvited guest may exercise general rights of free speech on property privately owned and used nondiscriminatorily for private purposes only." (*Id*. at p. 568.) The court concluded "the Fifth and Fourteenth Amendment rights of private property owners, as well as the First Amendment rights of all citizens, must be respected and protected. The Framers of the Constitution certainly did not think these fundamental rights of a free society are incompatible with each other." (*Id*. at p. 570.) There had been no dedication of the privately owned and operated shopping center to public use sufficient to entitle the handbillers to exercise their First Amendment rights on the shopping center property. The court reversed the injunction restraining the shopping center from interfering with the individuals' right to distribute handbills. (*Lloyd*, at p. 570.)

The California Supreme Court reached the opposite conclusion, applying the liberty of speech provision of the California Constitution. In *Robins v. Pruneyard*

9

*Shopping Center* (1979) 23 Cal.3d 899 (*Pruneyard*), a large shopping center had a policy of not permitting anyone to engage in publicly expressive activity, including gathering signatures on petitions, if the activity was not directly related to center's commercial purposes. The appellants, high school students who had solicited signatures for a political petition on the shopping center's premises, sued for an injunction preventing the shopping center from denying them access. (*Id*. at p. 902.)

After discussing *Lloyd* and various California cases, the court concluded *Lloyd* did not prevent California from providing greater protection to speech activities than the First Amendment provides. (*Pruneyard, supra*, 23 Cal.3d at p. 910.) The California Constitution provides: "'Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press.'" (*Id*. at p. 908, quoting Cal. Const., art. I, § 2.) Further, "'people have the right to ... petition government for redress of grievances ....'" (*Id*. at p. 907, quoting Cal. Const., art. I, § 3.) The court concluded these sections "protect speech and petitioning, reasonably exercised, in shopping centers even when the centers are privately owned." (*Pruneyard, supra*, 23 Cal.3d at p. 910.) The court added:

> "By no means do we imply that those who wish to disseminate ideas have free rein. We noted above Chief Justice Traynor's endorsement of time, place, and manner rules. [Citation.] Further, as Justice Mosk stated in *Diamond* [*v. Bland* (1974) 11 Cal.3d 332] 'It bears repeated emphasis that we do not have under consideration the property or privacy rights of an individual homeowner or the proprietor of a modest retail establishment. As a result of advertising and the lure of a congenial environment, 25,000 persons are induced to congregate daily to take advantage of the numerous amenities offered by the [shopping center there]. A handful of additional orderly persons soliciting signatures and distributing handbills in connection therewith, under reasonable regulations adopted by defendant to assure that these activities do not interfere with normal business operations [citation] would not markedly dilute defendant's property rights.' [Citation.]" (*Pruneyard, supra*, 23 Cal.3d at pp. 910-911.)

10

*Ralphs Grocery Co. v. United Food & Commercial Workers Union Local 8* (2012) 55 Cal.4th 1083 (*Ralphs*) further refined the principles set out in *Pruneyard*. The owner of a supermarket located in a development with other stores and restaurants sought an injunction to prevent a labor union from picketing on the privately owned walkway in front of the only customer entrance to its store. (*Ralphs,* at pp. 1088-1089.) The walkway between the entrance and the parking lot was approximately 15 feet wide; when the store opened, members of the union picketed in that area, encouraging people not to shop there because the employees were not represented by a union and had no collective bargaining agreement. (*Id*. at p. 1089.) The supermarket owner had regulations prohibiting speech activities within 20 feet of the store's entrance; the picketers ignored the regulations and stood within 5 feet of the store's entrance. (*Ibid*.) The police declined to remove the picketers without a court order. (*Ibid*.) The store owner sued for trespass and sought an injunction.

Citing *Pruneyard*, the *Ralphs* court stated: "A privately owned shopping center may constitute a public forum under the state Constitution because of 'the growing importance of the shopping center' [citation] '"as a place for large groups of citizens to congregate"' and '"to take advantage of the numerous amenities offered"' there, and also because of ""'the public character of the shopping center,'"" which is a result of the shopping center's owner having ""'fully opened his property to the public'"" [citation]." (*Ralphs, supra*, 55 Cal.4th at p. 1091.) It distinguished the common areas of a shopping center, "which generally have seating and other amenities producing a congenial environment that encourages passing shoppers to stop and linger and to leisurely congregate for purposes of relaxation and conversation," from areas immediately adjacent to store entrances, which "serve utilitarian purposes of facilitating customers' entrance to and exit from the stores and also, from the stores' perspective, advertising the goods and services available within." (*Id*. at p. 1092.) Expressive activities, like

11

gathering signatures and distributing leaflets, "pose a significantly greater risk of interfering with normal business operations when those activities are conducted in close proximity to the entrances and exits of individual stores rather than in the less heavily trafficked and more congenial common areas. Therefore, within a shopping center or mall, the areas outside individual stores' customer entrances and exits, at least as typically configured and furnished, are not public forums under this court's decision in *Pruneyard*." (*Ibid*.)

The court concluded "that to be a public forum under our state Constitution's liberty of speech provision, an area within a shopping center must be designed and furnished in a way that induces shoppers to congregate for purposes of entertainment, relaxation, or conversation, and not merely to walk to or from a parking area, or to walk from one store to another, or to view a store's merchandise and advertising displays." (*Ralphs, supra*, 55 Cal.4th at p. 1093.) "A private sidewalk in front of a customer entrance to a retail store in a shopping center is not a public forum for purposes of expressive activity .… On the private property of a shopping center, the public forum portion is limited to those areas that have been designed and furnished to permit and encourage the public to congregate and socialize at leisure." (*Id*. at p. 1104.)

Similarly, in *Van v. Target Corp.* (2007) 155 Cal.App.4th 1375, the court held "[t]he *Pruneyard* holding does not apply to the area immediately surrounding the entrance of an individual retail store that does not itself possess the characteristics of a public forum, even when that store is part of a larger shopping center." (*Id*. at p. 1377.) Where the store's apron and perimeter areas were not designed as public meeting places, the owner's interest in maintaining control over the area immediately in front of the store outweighed society's interest in using the area as a public forum. (*Id*. at p. 1390.)

In support of its request for an injunction, plaintiff submitted the declaration of its property manager, which stated that the shopping center's "sidewalk or apron areas are

12

not designed or furnished in a way that induces shoppers to congregate for purposes of entertainment, relaxation, or conversation. Instead, these sidewalk and apron areas … are designed only to facilitate customers' entrance to and exit from the stores." Further, the shopping center "is spread out, each store having easy access to the parking areas, to encourage customers to enter and exit each retailer." Plaintiff submitted aerial views of the shopping center and a diagram of it with the areas in which the solicitors solicited donations marked. It also submitted photographs of the store entrances where the solicitors carried on their solicitation of donations.

In its initial papers in support of the request for a preliminary injunction, plaintiff stated it had a policy of prohibiting all solicitation of donations on the shopping center premises. In its supplemental papers, plaintiff argued no part of the shopping center was a public forum, but requested only a limited preliminary injunction, permitting solicitation of donations in a designated public forum area. Plaintiff marked the designated public forum area on its diagram of the shopping center, and offered a photograph of it.

In opposition, Daniel presented photographs of areas of the shopping center, and argued they showed that plaintiff allowed others to conduct fundraisers in the same areas in which Daniel and his associates solicited donations, and that the shopping center hosted special events that encouraged people to come to the shopping center for relaxation and entertainment. Daniel claimed his solicitation efforts were orderly, not disruptive, and took place 10 to 15 feet from the store entrance. He asserted there were benches and seating areas within 10 feet of the entrance where the solicitors conducted their activities, inviting members of the public to sit, relax, and enjoy the scenery there; accordingly, Daniel concluded the area near the store entrance where he and his associates solicited donations was a public forum. Daniel attempted to support his

13

assertions with declarations setting out some of those facts.[2] The purported declarations, however, were not made under penalty of perjury as required. (Code Civ. Proc., §§ 527, subd. (e), 2015.5.)

In its ruling on plaintiff's request for a preliminary injunction, the trial court applied the correct rule of law. It recognized the *Pruneyard* holding that the liberty of speech provision of the California Constitution protects free speech in shopping centers, even when the shopping center is privately owned. (*Pruneyard, supra*, 23 Cal.3d at p. 910.) The trial court applied the more refined principles set out in *Ralphs*, which narrowed the *Pruneyard* rule to apply only to common areas of the shopping center, that "have seating and other amenities producing a congenial environment that encourages passing shoppers to stop and linger and to leisurely congregate for purposes of relaxation and conversation." (*Ralphs, supra*, 55 Cal.4th at p. 1092.) Under *Ralphs*, "areas immediately adjacent to the entrances of individual stores typically … are not designed to promote relaxation and socializing," and "serve utilitarian purposes of facilitating customers' entrance to and exit from the stores"; expressive activities conducted in those areas "pose a significantly greater risk of interfering with normal business operations." (*Ibid.*) Accordingly, "within a shopping center or mall, the areas outside individual stores' customer entrances and exits, at least as typically configured and furnished, are not public forums under this court's decision in *Pruneyard*." (*Ibid.*)

The remaining issue is whether substantial evidence supports the trial court's conclusion that the sidewalk areas where Daniel and his associates pursued their solicitation of donations are not a public forum, which implies a factual finding that those areas are not "designed and furnished to permit and encourage the public to congregate and socialize at leisure." (*Ralphs, supra*, 55 Cal.4th at p. 1104.) "[Q]uestions of fact are

---

[2] Many of the facts asserted by Daniel—concerning the locations at which the solicitors solicited donations and their distance from store entrances and seating areas, for example—were not included in the declarations he submitted.

within the sole province of the [trier of fact] and its conclusion, when based upon substantial evidence, is binding on a reviewing court." (*Spyres v. Olson* (1961) 195 Cal.App.2d 543, 544.) "[T]he applicable standards of appellate review of a judgment based on affidavits or declarations are the same as for a judgment following oral testimony: We must accept the trial court's resolution of disputed facts when supported by substantial evidence; we must presume the court found every fact and drew every permissible inference necessary to support its judgment, and defer to its determination of credibility of the witnesses and the weight of the evidence." (*Betz v. Pankow* (1993) 16 Cal.App.4th 919, 923.)

Plaintiff submitted a declaration stating that the sidewalk and apron areas in the shopping center are not designed or furnished in a way that induces shoppers to congregate for purposes of entertainment, relaxation, or conversation; they are designed only to facilitate customers' entrance to and exit from the stores. Further, the shopping center has a policy of permitting expressive activities only in certain areas; no solicitation of donations or gathering of signatures on petitions is permitted on the sidewalk or apron areas directly adjacent to the individual stores. Daniel and his associates solicited on the sidewalks immediately adjacent to stores; a diagram pinpointed the locations they used. Plaintiff presented photographs illustrating the area. Daniel submitted no admissible evidence in response.

We conclude substantial evidence supports the trial court's factual findings. Even if we were to consider the unsupported factual assertions made by Daniel, we would reach the same conclusion. We may not reweigh the conflicting evidence and reach a conclusion contrary to that reached by the trial court; we must interpret conflicting evidence in the light most favorable to plaintiff as the prevailing party. (*Whyte, supra*, 101 Cal.App.4th at p. 1450.) We find no error in the trial court's conclusion that the sidewalk and apron areas in which the solicitors conducted their solicitation activities

15

were not public forum areas in which plaintiff was obliged to permit members of the community to exercise their liberty of speech rights under the California Constitution.

## B.     *Irreparable harm*

Although damage is not an essential element of a cause of action for trespass to real property, "'the extraordinary remedy of injunction' cannot be invoked without showing the likelihood of irreparable harm. [Citations.]" (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1352; accord, *E.H. Renzel Co. v. Warehousemen's Union I.L.A. 38-44* (1940) 16 Cal.2d 369, 372-373.) "Irreparable harm" does not mean "injury beyond the possibility of repair or beyond possible compensation in damages." (*Wind v. Herbert* (1960) 186 Cal.App.2d 276, 285.) "'[T]he word "irreparable" is a very unhappily chosen one, used in expressing the rule that an injunction may issue to prevent wrongs of a repeated and continuing character, or which occasion damages estimable only by conjecture and not by any accurate standard.…'" (*Ibid.*) "'A trespass of a continuing nature, whose constant recurrence renders the remedy at law inadequate, unless by a multiplicity of suits, affords sufficient ground for relief by injunction.' [Citations.]" (*Mendelson v. McCabe* (1904) 144 Cal. 230, 233.)

In *Bank of Stockton v. Church of Soldiers* (1996) 44 Cal.App.4th 1623 (*Bank of Stockton*)[3], a church solicited donations from the bank's customers on the bank's private property. (*Bank of Stockton,* at p. 1625.) The trial court granted the bank a preliminary injunction, and the appellate court affirmed. (*Ibid.*) Regarding irreparable injury, the court stated:

> "The other prerequisite for a preliminary injunction involves balancing the
> harm to the plaintiff and defendant if a preliminary injunction is granted or
> denied. [Citation.] In the unique setting of free speech rights versus
> private property rights, this harm analysis is the same as the analysis
> concerning the likelihood of success on the merits. The point of cases such
> as [*Lloyd*] and [*Pruneyard*], when free speech and private property rights

---

[3]     Overruled in part by *Albertson's Inc. v. Young* (2003) 107 Cal.App.4th 106, 124.

16

collide, is to determine which right, under the circumstances, is more worthy of protection, or, stated differently, which right, if left unprotected, will lead to the most constitutional harm. Any donations or business lost by the Church or the Bank in the event the preliminary injunction is granted or denied is of only secondary importance, and, when one right clearly prevails over another, as it does here, the money issue need not be considered. Under the circumstances of this case, we cannot force the Bank to forfeit, even temporarily, its private property rights because of the prospect the Church will obtain more donations pending trial. We must conclude, therefore, that the harm to the Bank without the preliminary injunction outweighs the harm to the Church with the preliminary injunction." (*Bank of Stockton, supra*, 44 Cal.App.4th at p. 1631.)

According to *Bank of Stockton*, in a case such as this, which pits the defendant's liberty of speech rights against the plaintiff's property rights, a showing that the plaintiff is likely to prevail on the merits establishes that it will be irreparably harmed if the injunction is not granted. We have already determined the trial court's finding that plaintiff is likely to prevail on the merits is supported by law and substantial evidence. Accordingly, the trial court correctly concluded that, under *Bank of Stockton*, irreparable injury was demonstrated.

Plaintiff also submitted evidence of potential harm. One declaration it submitted stated the declarant was familiar with customer shopping habits, and customers choose to shop at a particular location based on custom and habit; when customers change their shopping habits to avoid disruptions, they often do not return to the original location. The declarant opined that "a shopping center's success depends on customer goodwill and a desire to return to the same location out of habit and loyalty. The disruptive solicitation activity of Nu Creation solicitors harms the [shopping center's] relationship with its tenants and customers and erodes customer goodwill." Thus, substantial evidence supports the trial court's conclusion that plaintiff adequately demonstrated a potential loss of customer goodwill.

17

## *DISPOSITION*

The order is affirmed.  Plaintiff is entitled to its costs on appeal.


_____
HILL, P. J.

WE CONCUR:


_____
LEVY, J.


_____
PEÑA, J.

18

Filed 1/6/15

**<u>CERTIFIED FOR PUBLICATION</u>**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| DONAHUE SCHRIBER REALTY GROUP, INC., | F068287 |
| Plaintiff and Respondent, | (Super. Ct. No. 13CECG02422) |
| v. NU CREATION OUTREACH et al., | **ORDER** |
| Defendants and Appellants. | |

It appearing that part of the nonpublished opinion filed in the above entitled matter on December 12, 2014, meets the standards for publication specified in California Rules of Court, rule 8.1105(c), IT IS ORDERED that the opinion be certified for publication in the Official Reports with the exception of part I. of the Discussion.

_____
HILL, P. J.

WE CONCUR:


_____
LEVY, J.


_____
PEÑA, J.