Filed 4/21/15  Kuba v. SeaWorld CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ALFREDO KUBA et al., | D064457 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2012-00091823-CU-CR-CTL) |
| SEAWORLD, LLC et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Steven R. Denton, Judge.  Affirmed.

Evans & Page, Corey A. Evans, Geneva Page and Bryan W. Pease, for Plaintiffs and Appellants.

Mitchell Silberberg & Knupp, Patricia H. Benson and Emily F. Evitt, for Defendants and Respondents.

### INTRODUCTION

The case involves a dispute over whether activists have a state constitutional right to engage in expressive activities at the entrance to an amusement park located on

parkland leased from a government entity. Alfredo Kuba and San Diego Animal Advocates (collectively, Kuba) appeal a summary judgment in favor of SeaWorld, LLC and certain of its employees (collectively, SeaWorld) on Kuba's claims for violations of the state Constitution's liberty in speech clause (Cal. Const., art I, § 2, subd. (a)) and Civil Code section 52.1. Kuba contends we must reverse the judgment as to his constitutional claim because the sidewalk in front of SeaWorld's ticketing entrance is a traditional public forum by virtue of its location within public parkland, and expressive activities may not be banned outright in a traditional public forum. Kuba further contends we must reverse the judgment as to his statutory claim because SeaWorld's threat to tow demonstrators' vehicles constituted a prohibited threat of violence. We are unpersuaded by either contention and further conclude Kuba's claims are time-barred. We, therefore, affirm the judgment.

BACKGROUND

SeaWorld operates a marine-themed amusement park and charges a fee for admission. The amusement park is located on 189.4 acres of commercial property SeaWorld leases from the City of San Diego (City). The lease requires SeaWorld to pay rent and property taxes, and gives SeaWorld the right to quiet possession of the leasehold during the lease term.

The leasehold is located within Mission Bay Park. According to the SeaWorld Master Plan Update, "Mission Bay Park is a seven square mile public aquatic park that provides a diverse range of recreational activities serving both local and regional needs including, boating, picnicking, walking, and bicycling. Additionally, Mission Bay Park

2

hosts a number of commercial-oriented recreation leases such as SeaWorld, resort hotels and recreational camping, as well as not-for-profit leases such as youth camping and sailing facilities."

SeaWorld has a policy prohibiting all trespassing, loitering, demonstrating, petitioning, and leafleting on the leasehold. No trespassing signs are posted approximately every 30 feet on SeaWorld's perimeter fence, and similar signs are posted at prominent locations on the leasehold.

Although Kuba knew of SeaWorld's policy, he and others with the San Diego Animal Advocates went to SeaWorld on March 31, 2007, to engage in expressive activities. The group convened in SeaWorld's paid parking lot and then, carrying banners, signs, and leaflets, walked through the parking lot to SeaWorld's ticketing booth area. They stopped by the member entrance and stood in front of a sign advising of SeaWorld's policy prohibiting solicitation and the distribution of literature on the leasehold.

SeaWorld security officers met the group when they reached the entrance, informed the group they were on private property, and requested they leave or face arrest. The security officers also threatened to have the group members' vehicles towed away. The group quickly returned to the parking lot and left.

Kuba sued SeaWorld in federal district court, claiming SeaWorld's policy violated his free speech rights under the federal and state Constitutions. The federal district court granted summary judgment to SeaWorld on Kuba's federal claims and dismissed Kuba's state law claims, declining to exercise supplemental jurisdiction over them. The Ninth

3

Circuit Court of Appeals affirmed the federal district court's judgment. (*Kuba v. SeaWorld, Inc.* (2011) 428 Fed.Appx. 728, 730.)

Kuba then filed the instant action asserting claims for violation of the state Constitution's Liberty of Speech clause (Cal. Const., art. I, § 2, subd. (a)) and Civil Code section 52.1. The trial court granted summary judgment for SeaWorld, finding the area where Kuba attempted to engage in expressive activities was not a public forum, either by tradition or by function. The court also found a threat by SeaWorld's security officers to tow demonstrators' vehicles was not the type of threat prohibited by Civil Code section 52.1.[1]

## DISCUSSION

### I

#### *Statute of Limitations*

#### A

Before seeking summary judgment, SeaWorld demurred to Kuba's complaint, asserting Kuba's causes of action were time-barred because Kuba did not file the complaint within 30 days after the federal court dismissed his state law claims as required

---

[1] As part of its papers below, SeaWorld submitted 39 evidentiary objections, which the trial court overruled without comment. In footnote 1 of its respondent's brief, SeaWorld stated it was renewing all of its objections on appeal. We decline to review the propriety of the trial court's ruling on SeaWorld's objections because SeaWorld did not file a cross-appeal and has not shown review is otherwise necessary to determine whether any trial court error prejudiced Kuba. (Code Civ. Proc., § 906; *Building Industry Assn. v. City of Oceanside* (1994) 27 Cal.App.4th 744, 758, fn. 9.)

by 28 U.S.C. section 1367(d) (§ 1367(d)).[2] The court overruled the demurrer, noting a split of authority about the proper interpretation of § 1367(d) and finding more persuasive the interpretation expressed in *Bonifield v. County of Nevada* (2001) 94 Cal.App.4th 298 (*Bonifield*), under which Kuba's state law claims were timely. SeaWorld did not reassert this point in its summary judgment motion.

During the pendency of this appeal, the California Supreme Court resolved the split of authority and expressly disapproved of *Bonifield's* interpretation of § 1367(d). (*City of Los Angeles v. County of Kern* (2014) 59 Cal.4th 618, 622.) Based on this new precedent, SeaWorld contends we should affirm the judgment on the alternative legal ground Kuba's causes of action are time-barred. (See *Sahadi v. Scheaffer* (2007) 155 Cal.App.4th 704, 714 [whether a cause of action is time-barred is a question of law]; *Ward v. Taggart* (1959) 51 Cal.2d 736, 742 [questions of law on undisputed facts may be raised for the first time on appeal]; *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [an appellate court will affirm a judgment if the judgment is correct on any applicable legal theory].) We agree.

B

Although federal court jurisdiction is generally limited to claims presenting a federal case or controversy or disputes between diverse parties, federal courts may exercise supplemental jurisdiction over related state claims forming part of the same case

---

[2]    This code section provides the statute of limitations for a supplemental state claim dismissed from a federal action "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." (§ 1367(d).)

or controversy. (28 U.S.C. § 1367(a); *City of Los Angeles v. County of Kern*, *supra*, 59 Cal.4th 618, 622.) If the basis for federal court jurisdiction dissolves in a case in which the federal court has exercised supplemental jurisdiction over state claims, the federal court may dismiss the state claims, leaving them to be refiled in state court. (28 U.S.C. § 1367(c)(3); *City of Los Angeles v. County of Kern*, *supra*, at p. 622.) When this occurs, federal laws provides a grace period allowing any otherwise time-barred state claims to be refiled in state court no later than 30 days after the federal court dismissed them. (28 U.S.C. § 1367(d); *City of Los Angeles v. County of Kern*, *supra*, at p. 622.)

The statute of limitations for Kuba's causes of action is the same as for personal injury causes of action, which is currently two years. (Code Civ. Proc., § 335.1; *Gatto v. Sonoma* (2002) 98 Cal.App.4th 744, 760; *West Shield Investigations & Sec. Consultants v. Superior Court* (2000) 82 Cal.App.4th 935, 951-953.) Kuba's causes of action accrued when they were complete with all their elements or, stated differently, when the wrongful act was done and consequent liability arose. (*Norgart v. Upjohn* (1999) 21 Cal.4th 383, 397; *Investors Equity Life Holding Co. v. Schmidt* (2011) 195 Cal.App.4th 1519, 1531.) The allegedly wrongful act in this case was SeaWorld's refusal to allow Kuba to engage in expressive activities on its property. As this act occurred on March 31, 2007, Kuba's causes of action became time-barred on March 31, 2009, unless Kuba filed his complaint within 30 days of the federal court's dismissal of the state claims.

The federal court dismissed Kuba's state claims on April 21, 2011, when the Ninth Circuit affirmed the federal district court's decision granting summary judgment for SeaWorld on Kuba's federal claims and declining to exercise supplemental jurisdiction on

6

Kuba's state claims. (*Kuba v. SeaWorld, Inc.*, *supra*, 428 Fed.Appx. at p. 730 & fn. 1; *Kendrick v. City of Eureka* (2000) 82 Cal.App.4th 364, 371.) Kuba did not file his complaint until almost 10 months later on February 3, 2012. Accordingly, his claims are time-barred. (28 U.S.C. § 1367(d); *City of Los Angeles v. County of Kern*, *supra*, 59 Cal.4th at p. 622.)

The fact Kuba is seeking injunctive and declaratory relief does not alter our conclusion. "[T]he nature of the right sued upon and not the form of action nor the relief demanded determines the applicability of the statute of limitations under our code." (*Maguire v. Hibernia Savings & Loan Society* (1944) 23 Cal.2d 719, 733; *Carter v. Prime Healthcare Paradise Valley LLC* (2011) 198 Cal.App.4th 396, 412.)

We are also unpersuaded the statute of limitations is extended under either the continuing violation doctrine or the theory of continuous accrual. "The continuing violation doctrine aggregates a series of wrongs or injuries for purposes of the statute of limitations, treating the limitations period as accruing for all of them upon commission or sufferance of the last of them." (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1192 (*Aryeh*).) The doctrine does not apply where, as here, the alleged wrong was discrete and independently actionable and it was not necessary for a series of harms to accumulate for the alleged wrong to become apparent. (*Id*. at p. 1198.)

Similarly, "under the theory of continuous accrual, a series of wrongs or injuries may be viewed as each triggering its own limitations period, such that a suit for relief may be partially time-barred as to older events but timely as to those within the applicable limitations period." (*Aryeh*, *supra*, 55 Cal.4th at p. 1192.) The application of

7

the theory of continuous accrual is generally limited to circumstances where a recurring obligation exists and each new breach of the obligation provides all the elements of a claim, which may be treated as an independently actionable wrong triggering its statute of limitations. (*Id.* at p. 1199.) As the record does not show the existence of a recurring obligation by SeaWorld toward Kuba or that SeaWorld committed an independently actionable wrong within the preceding two years, the theory does not apply in this case.

II

*Summary Judgment*

Even if Kuba's causes of action were not time-barred, he has not established the court erred in granting summary judgment. "Summary judgment is warranted when 'all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' [Citation.] Defendants moving for summary judgment meet this burden by showing that one or more elements of a cause of action cannot be established or that there is a complete defense to the action. [Citation.] Once a defendant makes this showing, the burden shifts to the plaintiff to set forth specific facts showing that a triable issue of material fact exists as to that cause of action or defense. [Citations.]

"We review a trial court's grant of summary judgment de novo, 'considering "all of the evidence set forth in the [supporting and opposition] papers, except that to which objections have been made and sustained by the court, and all [uncontradicted] inferences reasonably deducible from the evidence." ' [Citations.] 'In independently reviewing a motion for summary judgment, we apply the same three-step analysis used by the

8

superior court.  We identify the issues framed by the pleadings, determine whether the moving party has negated the opponent's claims, and determine whether the opposition has demonstrated the existence of a triable, material factual issue.' "  (*Van v. Target Corp.* (2007) 155 Cal.App.4th 1375, 1382.)

A

*Violation of Liberty of Speech Clause Claim*

1

"The free speech guarantee of the California Constitution provides:  'Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right.  A law may not restrain or abridge liberty of speech or press.'  (Cal. Const., art. I, § 2, subd. (a).)  [¶] In considering a free speech claim under article I, 'we begin with the unquestioned proposition that the California Constitution is an independent document and its constitutional protections are separate from and not dependent upon the federal Constitution . . . .' [Citations.]  'The state Constitution's free speech provision is "at least as broad" as [citation] and in some ways is broader than [citations] the comparable provision of the federal Constitution's First Amendment.' [Citation.]  Unlike the First Amendment, California's free speech clause 'specifies a "right" to freedom of speech explicitly and not merely by implication,' 'runs against . . . private parties as well as governmental actors' and expressly 'embrace[s] all subjects.' [Citation.]  However, '[m]erely because our provision is worded more expansively and has been interpreted as more protective than the First Amendment . . . does not mean that it is broader than the First Amendment in all its

9

applications.' [Citations.] Our case law interpreting California's free speech clause has given respectful consideration to First Amendment case law for its persuasive value, while making clear that 'federal decisions interpreting the First Amendment are not controlling.' " (*Beeman v. Anthem Prescription Management, LLC* (2013) 58 Cal.4th 329, 340-341.)

"In assessing a free speech violation, the type of forum dictates the permissible restriction. In a traditional public forum, free speech rights receive the greatest degree of protection." (*Prigmore v. City of Redding* (2012) 211 Cal.App.4th 1322, 1335.) Expressive activities may not be banned outright in a traditional public forum. Rather, they may be subject to content-neutral time, place, and manner restrictions if the restrictions are narrowly tailored to serve a significant government interest and leave open ample alternative means of communication. They may also be subject to content-based restrictions if the restrictions are necessary to serve a compelling government interest and are narrowly tailored to that end. (*Ibid*.)

Kuba's constitutional claim rests on his contention the sidewalk in front of SeaWorld's ticketing entrance is a traditional public forum, precluding SeaWorld from banning all expressive activities there. "In considering whether an area constitutes a traditional public forum, courts have emphasized (1) 'the actual use and purposes of the property, particularly status as a public thoroughfare and availability of free public access to the area,' (2) 'the area's physical characteristics, including its location and the existence of clear boundaries delimiting the area,' and (3) 'traditional or historic use of both the property in question and other similar properties.' " (*Prigmore v. City of Redding*, *supra*,

10

211 Cal.App.4th at p. 1339; *Boardley v. U.S. Dept. of Interior* (D.C. Cir. 2010) 615 F.3d 508, 514 [a traditional public forum is a place which by long tradition or by government fiat has been devoted to assembly and debate].)

As factual support for his traditional public forum position, Kuba points to evidence he contends shows: (1) the sidewalk in front of SeaWorld's ticketing entrance is on land owned by the City and dedicated as a public park; (2) it contains a public bus stop; and (3) it is a public right of way connecting to other sidewalks in Mission Bay Park. However, the City's ownership or control of the sidewalk or the land underneath it is not dispositive. (*Cornelius v. NAACP Legal Defense and Educational Fund, Inc.* (1985) 473 U.S. 788, 803 [government ownership or control of property does not guarantee access to the property for expressive activities].) The sidewalk's presence within Mission Bay Park is also not dispositive. "The dispositive question is not what the forum is *called*, but what *purpose* it serves, either by tradition or specific designation. What makes a park a traditional public forum is not its grass and trees, but the fact that it has 'immemorially been held in trust for the use of the public, and time out of mind, ha[s] been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.' " (*Boardley v. U.S. Dept. of Interior*, *supra*, 615 F.3d at p. 515, quoting *Perry Education Assn. v. Perry Local Educators' Assn.* (1983) 460 U.S. 37, 45; see also *U.S. v. Kokinda* (1990) 497 U.S. 720, 728-729 ["the location and purpose of a publicly owned sidewalk is critical to determining whether such a sidewalk constitutes a public forum"].) Thus, for the sidewalk in front of SeaWorld's ticketing entrance to be a traditional public forum, the sidewalk must be held open for public

11

discourse purposes. (*Boardley v. U.S. Dept. of Interior*, *supra*, at p. 515; see also *International Soc. for Krishna Consciousness, Inc. v. Lee* (1992) 505 U.S. 672, 679 [a traditional public forum is property upon which the free exchange of ideas is a principal purpose]; *Reeves v. Rocklin Unified School Dist*. (2003) 109 Cal.App.4th 652, 662 [same].)

Here, there is no evidence the sidewalk in front of SeaWorld's ticketing entrance is or has ever been held open for public discourse purposes. Before SeaWorld's construction, the leasehold was a tidal marsh, which the City had to dredge to create the land underneath the leasehold. SeaWorld paid for and constructed its main gate, ticketing entrance and all of the other structures on its premises. It also paid for and constructed its parking lot area. Neither SeaWorld's main gate nor its exit include pedestrian walkways. While there is a pedestrian and bicycle path along SeaWorld's perimeter, pedestrians and bicyclists are kept away from SeaWorld's parking lot by SeaWorld's fencing and landscaping.

Although there is currently no master plan requiring or contemplating public pedestrian or bicycle paths within SeaWorld's leasehold, there is a bus stop located in SeaWorld's parking lot on the sidewalk on the southwest corner of the park's perimeter. In addition, there is evidence there may have been at least a conceptual pedestrian or bicycle path through SeaWorld's parking lot approximately 30 years ago. There is also evidence more than a decade ago joggers cut through SeaWorld's parking lot without SeaWorld's permission. However, this evidence falls far short of showing the sidewalk in front of SeaWorld's ticketing entrance is or has ever been held open for public discourse

12

purposes.  Consequently, Kuba has not established there is a triable issue of material fact as to whether the sidewalk is a traditional public forum.

2

As SeaWorld points out, the absence of evidence the sidewalk is a traditional public forum does not necessarily preclude the possibility of a state constitutional violation.  Generally, landowners and tenants may exclude persons from trespassing on their property as the right to exclude is a fundamental aspect of private property ownership.  (*Donahue Schriber Realty Group, Inc. v. Nu Creation Outreach* (2014) 232 Cal.App.4th 1171, 1178, citing *Allred v. Harris* (1993) 14 Cal.App.4th 1386, 1390.) Nonetheless, when a property owner holds private property open for use by the general public, the property may, in certain circumstances, become the functional equivalent of a public forum subject to the exercise of state constitutional speech and assembly rights. (*Ralphs Grocery Co. v. United Food and Commercial Workers Union Local 8* (2012) 55 Cal.4th 1083, 1091-1092 (*Ralphs Grocery*).)  To constitute the functional equivalent of a public forum, an area on private property must be designed and furnished to induce patrons to congregate for entertainment, relaxation, or conversation and not merely to walk from a parking area, to walk from one place to another on the property, or to view the property owner's merchandise and advertising displays.  (*Id.* at pp. 1093, 1104.)

We need not devote extended analysis to whether the sidewalk in front of SeaWorld's ticketing entrance is the functional equivalent of a public forum because Kuba expressly disavows any reliance on the *Ralphs Grocery* case and related authorities, choosing instead to rely solely on traditional public forum authorities.  We nevertheless

13

note just as there is no evidence the sidewalk has ever been held open for public discourse purposes, there is no evidence it is designed and furnished to induce patrons to congregate for entertainment, relaxation, or conversation. Thus, even if Kuba had relied on the *Ralph Grocery* case and related authorities, he has not established there is a triable issue of material fact as to whether the sidewalk is the functional equivalent of a public forum.

III

*Violation of Civil Code Section 52.1 Claim*

Subdivisions (a) and (b) of Civil Code section 52.1 collectively authorize an individual action at law, a suit in equity, or both, against anyone who interferes, or attempts to interfere, by threats, intimidation, or coercion, with another's exercise or enjoyment of his or her constitutional rights. (*Jones v. Kmart Corp.* (1998) 17 Cal.4th 329, 331; *Austin B. v. Escondido Union School Dist.* (2007) 149 Cal.App.4th 860, 881-883.) However, speech alone is not sufficient to support such an action unless: (1) the speech threatens violence against a specific person or group of persons; (2) the speech causes the specific person or group of persons to reasonably fear violence will be committed against them or their property; and (3) the speaker had the apparent ability to carry out the threat. (Civ. Code, § 52.1, subd. (j).)

Kuba bases his statutory claim on SeaWorld's alleged threat to tow the demonstrators' vehicles unless they left SeaWorld's leasehold. This threat does not provide sufficient support for Kuba's claim because it is not a threat of violence against a specific person or group of persons. It is also not the type of threat that would cause a

14

specific person or group of persons to *reasonably* fear violence will be committed against them or their property.  Accordingly, Kuba has not established there is a triable issue of material fact as to his cause of action for violating Civil Code section 52.1.

## DISPOSITION

The judgment is affirmed.  Respondents are awarded their appeal costs.


McCONNELL, P. J.

WE CONCUR:


McDONALD, J.


AARON, J.