Filed 6/14/16  Delgado v. Campbell CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| FRANCISCO DELGADO, | D069927 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. RIC1110768) |
| LAROY RANDALL CAMPBELL, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Riverside County, Craig G. Riemer, Judge.  Affirmed.

Law Office of Michael A. Younge and Michael A. Younge for Plaintiff and Appellant.

Laroy Randall Campbell, in pro. per., for Defendant and Respondent.

INTRODUCTION

Francisco Delgado appeals from a judgment in favor of Laroy Randall Campbell following a bench trial on Delgado's causes of action for intentional misrepresentation,

concealment, and money had and received stemming from a $150,000 investment Delgado made in a corporation formed by Campbell and Campbell's wife to manufacture, market, and distribute a specialized gardening tool. Referencing only the evidence favorable to his position and failing to acknowledge an adverse credibility finding, Delgado contends we must reverse the judgment because he presented evidence at trial establishing each element of the above causes of action. After considering the evidence in the light most favorable to the judgment, which we are obliged to do (*In re I.J.* (2013) 56 Cal.4th 766, 773), we conclude there is substantial evidence to support the court's decision on the above causes of action. We, therefore, affirm the judgment.

BACKGROUND

In 1996, Campbell was convicted in federal court of transporting falsely made securities interstate, uttering counterfeit securities, and bank fraud. In 2007, Campbell and his wife formed a corporation to manufacture, market, and distribute a specialized gardening tool. The Campbells obtained a design patent for the tool in 2009.

Business plan writers prepared two business plans for the corporation: one in October 2007 (2007 business plan) and one in March 2010 (2010 business plan). The stated purpose of the 2007 business plan was to establish the need for the tool and the viability of the corporation to be a successful venture with sales in excess of 300,000 units and revenue of $8 million. The 2007 business plan also stated the Campbells each owned 50 percent of the corporation, and they were seeking $1.2 million to launch their company and provide two years of operating cash flow. The 2007 business plan's financial model projected, with the sale of 150,000 retail units and 150,000 wholesale

2

units, the corporation would have gross profits of $3,684,225 and net earnings of $2,273,868.[1]  Among its other pertinent representations, the 2007 business plan stated the tool would be sold in retail locations such as Costco, Home Depot, Ace Hardware, and Lowe's; and the corporation's exit strategy was to sell the corporation after its sales exceeded $300,000 annually to a large, publicly traded company for 10 times the owners' equity or four times the gross profit multiplier, whichever was greater.

The 2010 business plan was similar to, but varied in key respects from, the 2007 business plan.  The stated purpose of the 2010 business plan was to establish the corporation as a viable business venture and investment opportunity with potential sales of 100,000 units and revenue of $3 million in the first two years of production.  The 2010 business plan also stated the corporation owned the tool's patent and the Campbells each owned 50 percent of the corporation; however, the Campbells' ownership interests in the corporation would be diluted as ownership equity was sold to investors.  In addition, the 2010 business plan stated the Campbells were seeking $150,000 in first round funding to launch the company, with the possibility of a second-stage capital injection of up to $300,000 if the company received a letter of intent to purchase from Costco and had the ability to ship 25,000 tools.  The 2010 business plan's 12-month profit and loss forecast anticipated gross profits of $648,494 and net earnings of $98,837, and its five-year profit and loss forecast anticipated gross profits of $8,334,862 and net earnings of $4,783,914.  Like the 2007 business plan, the 2010 business plan included an exit strategy, which was

---

[1]     The business plan also included 12-month and five-year profit and loss forecasts, but the record copies of the forecasts were illegible.

3

to sell the corporation after its annual sales exceeded $3 million to a large, publicly traded company for 10 times the owners' equity or four times the gross profit multiplier, whichever was greater.

The same month the 2010 business plan was prepared, the Campbells, Delgado, and another investor signed a document stating Delgado and the other investor would pay $300,000 for 25 percent of the corporation. Delgado and the other investor were to pay $100,000 immediately and $200,000 within six months. Delgado then wrote a personal check to the corporation for $50,000, and Campbell's wife signed a stock certificate certifying Delgado and the other investor were "12.5% owner" of the corporation's shares.[2] Delgado testified he did not know about the 2010 business plan when he made his investment decision. Instead, he received and based his investment decision on the 2007 business plan and a promotional video for the tool.

In April 2010 Delgado gave the corporation two cashier's checks for $50,000 each. The same month, the Campbells, Delgado and the other investor signed a document stating "that the 300,000 dollar[s] that was paid to [the corporation] will be given back at the rate of 6 per cent after 12 months if [the corporation] does show a profit of at lease 300,000.00." (Grammar and spelling errors in original; some capitalization omitted.) Delgado testified he did not know why Campbell wanted to pay him interest as he understood his investment in the corporation to mean he and Campbell were business partners. Regardless, he never received any interest payments.

---

[2] The other investor was neither a party to nor a witness in this case.

Campbell testified that at the time Delgado invested in the corporation, the tool was just an idea and only a prototype of it existed. He denied ever telling Delgado the tool was already in production and being sold in stores. Campbell planned to use Delgado's investment to build molds to make the tool and market it to different retailers, specifically Ace Hardware, Lowe's, Home Depot, and Costco. Delgado admitted he knew the tool was not in production when he invested in the corporation. He also did not believe the tool was being sold by any of the above retailers when he invested in the corporation.

Campbell further testified he disclosed his federal convictions to Delgado before Delgado invested any money in the corporation because he was concerned Delgado wanted to use the investment to launder money. Delgado denied receiving any such disclosure and testified he would not have invested in the corporation had he known about Campbell's criminal history. He testified he was unemployed when he made the investment and had obtained the money for the investment by refinancing his home.

Within a week after Delgado gave the corporation the last check for $50,000, the California Secretary of State suspended the corporation for not paying taxes. Campbell never notified Delgado of the corporation's suspension.

In August 2010 Campbell sent Delgado an e-mail stating a meeting with Ace Hardware had gone well and Ace Hardware was setting up the corporation as a vendor. At trial, Campbell introduced photographs showing the tools being offered for sale at Ace Hardware stores and testified the corporation began receiving sales revenue in 2010.

Nonetheless, the corporation has never been profitable, and Delgado never received any return on his investment.

Delgado sued Campbell and others, alleging causes of action for: violation of Corporations Code section 25503, violation of Corporations Code section 25401, intentional misrepresentation, concealment, negligent misrepresentation, and money had and received.[3]  Delgado dismissed the first and second causes of action before trial.[4]  At trial, Delgado focused exclusively on the fraud-related causes of action.

As to these causes of action, the complaint alleged Campbell made the following misrepresentations:  (1) the corporation was organized in California and was in good standing with all governmental authorities; (2) the corporation was qualified to sell securities under California law; (3) the corporation was a viable entity in the business of manufacturing, marketing, and distributing a specialized garden tool; (4) the corporation had existing relationships for the sale of its product with Costco, Home Depot, Ace Hardware, and Lowe's; (5) the corporation would have gross revenues totaling $17,720,031 in the first five years of operation; (6) the corporation would have gross profit totaling $9,634,661 in the first five years of operation; (7) the corporation would have net earnings before interest, taxes, depreciation and amortization totaling

---

[3]  The other defendants defaulted.  The bench trial in this case served both as the trial on the merits for Campbell and a prove-up hearing for the defaulted defendants.

[4]  In December 2010, the California Department of Corrections issued a desist and refrain letter against the Campbells, the corporation, and others for violating Corporations Code sections 25110 and 25401 by selling unqualified, nonexempt securities by means of misrepresentations and/or omissions of material fact.  Six months later, the Campbells and the corporation stipulated to a final desist and refrain order.

$6,026,180 in the first five years of operation; (8) the corporation owned the rights to the gardening tool's patent; (9) the corporation had the financial ability to return 36 percent profit from its business activities; and (10) Delgado would receive a share certificate evidencing a 12.5 percent interest in the corporation.

A day after the bench trial concluded, the court issued a tentative decision in Campbell's favor. As to Delgado's intentional and negligent misrepresentation causes of action, the court found Delgado had failed to prove Campbell had made any false representations of material fact. As to these causes of action and the concealment cause of action, the court further found Delgado had failed to prove reasonable reliance. The court noted Delgado testified on his own behalf in support of each of his claims; however, the court found his testimony incredible because, among other reasons, he repeatedly contradicted himself, he failed to offer available corroborating evidence, and his testimony was often facially unbelievable.

As to the money had and received cause of action, the court found the undisputed evidence showed Delgado paid $150,000 to purchase an interest in the corporation. The money was not a loan.

Finally, the court found the liability of the defaulted defendants depended upon Campbell's liability. Since Delgado had failed to prove Campbell's liability, he failed to prove the liability of the defaulted defendants.

7

DISCUSSION

I

Delgado's appeal essentially presents a challenge to the sufficiency of the evidence to support the court's decisions as to his intentional misrepresentation, concealment, and money had and received causes of action. However, Delgado has forfeited this challenge because his briefs do not summarize all of the material evidence. His briefs summarize only the evidence favorable to his position and entirely ignore the court's adverse credibility determination. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881; *Sterling v. Sterling* (2015) 242 Cal.App.4th 185, 195.)

II

Even if Delgado had not forfeited this challenge, he has not established its merits. In reviewing a challenge to the sufficiency of the evidence, "the power of the appellate court is limited to the determination of whether there is any evidence, contradicted or uncontradicted, which will support the judgment rendered, and all reasonable inferences must be indulged to uphold it, if possible." (*Memorial Hospital Asso. v. Pacific Grape Products Co.* (1955) 45 Cal.2d 634, 635.) We do not reweigh evidence and we defer to the court's credibility determinations. (*Tribeca Companies, LLC v. First American Title Ins. Co.* (2015) 239 Cal.App.4th 1088, 1102; *Donahue Schriber Realty Group, Inc. v. Nu Creation Outreach* (2014) 232 Cal.App.4th 1171, 1183.)

A

To prevail on his intentional misrepresentation and concealment causes of action, Delgado had to prove: " '(1) misrepresentation (false representation, concealment or non-

8

disclosure); (2) knowledge of falsity (or "scienter"); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage.' " (*Hackethal v. Nat'l Casualty Co.* (1987) 189 Cal.App.3d 1102, 1111; *Daniels v. Select Portfolio Servicing, Inc.* (2016) 246 Cal.App.4th 1150, 1166; *Boschma v. Home Loan Center, Inc.* (2011) 198 Cal.App.4th 230, 248.) Much of the evidence related to these elements was conflicting. Nonetheless, as summarized above, there was evidence showing the alleged misrepresentations underlying these cause of actions either never occurred or occurred after Delgado made his investment decision, or they were not knowingly false, or they were unactionable statements of opinion or predictions of future events, not actionable statements of existing fact. (*Brakke v. Economic Concepts, Inc.* (2013) 213 Cal.App.4th 761, 769 [an actionable misrepresentation must be of an existing fact, not an opinion or prediction of future events].)

Moreover, as to whether Delgado justifiably relied on any of the alleged misrepresentations, the court expressly found Delgado's testimony on this point was neither generally nor specifically credible. Delgado's appellate briefs do not identify any legal or factual basis for us to disregard this adverse credibility finding and there is substantial evidence in the record to support each of the court's reasons for the finding. Accordingly, we conclude Delgado has failed to establish there was insufficient evidence to support the court's decision on the intentional misrepresentation and concealment causes of action.

9

B

To prevail on his money had and received cause of action, Delgado had to prove Campbell was indebted to Delgado for money Campbell received for Delgado's use and benefit. (*Rutherford Holdings, LLC v. Plaza Del Rey* (2014) 223 Cal.App.4th 221, 230.) However, Delgado's trial testimony established the money Delgado gave Campbell was an investment in the corporation, not a debt between Delgado and Campbell. Delgado's counsel implicitly acknowledged this failure of proof by focusing his examinations and closing arguments exclusively on Delgado's fraud-related causes of action. Thus, we conclude Delgado has failed to establish there was insufficient evidence to support the court's decision on the money had and received cause of action.

DISPOSITION

The judgment is affirmed. Respondent is awarded his costs on appeal.

McCONNELL, P. J.

WE CONCUR:

HUFFMAN, J.

O'ROURKE, J.

10